IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AUTO DRIVEAWAY FRANCHISE SYSTEMS, LLC,<br><br>    Plaintiff,<br><br>          v.<br><br>JEFFREY CORBETT, AUTO DRIVEAWAY RICHMOND, LLC, and INNOVAUTO USA, LLC,<br><br>    Defendants. | Case No.: 1:18-cv-4971 |

## COMPLAINT

Plaintiff Auto Driveaway Franchise Systems, LLC ("**Auto Driveaway**"), by and through its attorneys, hereby brings the following Complaint for Trademark Infringement, False and Deceptive Advertising, False Designation of Origin, Breach of Contract, Tortious Interference with Prospective Business Opportunity, and Declaratory Judgment that Auto Driveaway owns certain technology against Defendants Jeffrey Corbett, Auto Driveaway Richmond, LLC ("**AD Richmond**") and InnovAuto USA, LLC ("**InnovAuto**"). In support, Plaintiff Auto Driveaway alleges as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff Auto Driveaway is a franchisor that operates throughout the United States and offers, among other things, private and commercial vehicle transportation, fleet shipping and management, vehicle inspections, and truck transportation. Defendant AD Richmond is a multi-unit franchisee of Plaintiff Auto Driveaway and Defendant Corbett is a Guarantor of the AD Richmond Franchises. As such, Defendants Corbett and AD Richmond are

1743724.10
12451.881002

entrusted with confidential and proprietary information of Auto Driveaway. This includes Auto Driveaway's technology, software, and systems that Defendants use to operate the Franchises. During the past four months (March to July 2018), Defendants Corbett and AD Richmond secretly engaged Plaintiff Auto Driveaway's software developer to design an unauthorized and revised version of Plaintiff Auto Driveaway's proprietary software and mobile application ("**Unauthorized App**") so that the Unauthorized App could perform many of the same functions as Plaintiff Auto Driveaway's technology. Importantly, the Unauthorized App integrates elements of Auto Driveaway's proprietary software. Moreover, despite contractual obligations to disclose and turnover to the franchisor any improvements related to the franchise operations, Defendant Corbett instead formed a new entity, namely Defendant InnovAuto, created a brand, bought a domain name, and made extensive plans to exploit the Unauthorized App technology for his sole benefit.

2.      Plaintiff Auto Driveaway was unaware of any of Defendants' covert activities until several weeks ago (early July 2018), and even then, Defendants refused to tell Plaintiff Auto Driveaway what they were doing. Plaintiff Auto Driveaway has now discovered that Defendant Corbett has been covertly peddling the unapproved Unauthorized App to Auto Driveaway customers for months. Defendants further created marketing materials wherein the Unauthorized App is branded under the mark INNOVAUTO and appears in connection with Auto Driveaway trademarks. This improper use of the Auto Driveaway trademarks is likely to create confusion in the marketplace as to the source of the products and services offered by an Auto Driveaway franchisee. Plaintiff Auto Driveaway has also discovered that Corbett used his position at AD Richmond and his access to the Auto Driveaway network to pitch a multi-phase proposal to one of Auto Driveaway's largest customers for a contract including Auto

Driveaway's technology and the Unauthorized App branded under Defendant InnovAuto's mark. Phase 1 of Defendants' proposal is valued at more than $500,000. This proposal was made last week - the day before Auto Driveaway released its own updated proprietary mobile application.

3.     Therefore, Plaintiff Auto Driveaway seeks injunctive relief to stop Defendants' unauthorized use of its technology, to protect its trademarks, its system, and its customer relationships, and further seeks damages for actions that Defendants have already taken.

## THE PARTIES

4.     Plaintiff Auto Driveaway is and was at all relevant times a Michigan limited liability company with its principal place of business in Lombard, Illinois. Auto Driveaway is a franchisor of Auto Driveaway franchises across the United States, including franchises in Virginia, Tennessee, and Ohio.

5.     Defendant Corbett is, and at all relevant times was a citizen of Virginia. Corbett is the sole member of Defendant AD Richmond. Corbett is the guarantor of AD Richmond's franchise obligations. Corbett is the sole member of Defendant InnovAuto.

6.     Defendant AD Richmond is and was at all relevant times a Virginia limited liability company with its principal place of business in Richmond, Virginia. AD Richmond is a franchisee of Auto Driveaway.

7.     Defendant InnovAuto is and was at all relevant times a Virginia limited liability company with its principal place of business in Richmond, Virginia.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); 15 U.S.C. § 1114, *et. seq.* (the Lanham Act), and 28 U.S.C. § 1332

(diversity). Further, this Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

9.     In the relevant Franchise Agreements, the parties agreed that any state or federal court located in Cook County, Illinois has exclusive jurisdiction regarding any enforcement of, or dispute concerning, the Franchise Agreements.

10.     Venue in this District is proper because Defendants targeted customers in Illinois, Corbett came to Illinois to attend meetings with Auto Driveaway, and because the terms of the parties' Franchise Agreements so provide.

## FACTS

### A.     Auto Driveaway Creates a Market, Expands, and Innovates

11.     Founded in 1952, Plaintiff Auto Driveaway was the first vehicle transport company in the United States. It is now the largest in North America. For more than sixty five years, Auto Driveaway has enjoyed a strong reputation for providing quality professional service in ever expanding areas. It is constantly adding new services and improving its offerings to meet the evolving needs of its customers.

12.     Today, Auto Driveaway has 40 offices across the United States providing private and commercial vehicle transportation, fleet shipping, fleet management, truck transportation, vehicle condition reporting, government vehicle shipping services, vehicle storage, title and registration services, inspections, maintenance, and reconditioning. Auto Driveaway's vehicle transportation methods include door-to-door delivery, insurance protection, and an optional expedited service which guarantees pick-up within 48 hours.

13.     Plaintiff Auto Driveaway is also in the business of franchising its transportation offices and providing services from company-owned locations across the country under the trade name "Auto Driveaway" (the "**Trade Name**").

14.     Plaintiff Auto Driveaway owns numerous trademarks and service marks associated with its franchised and company owned operations.  These include the word mark AUTO DRIVEAWAY, which is registered in the United States Patent and Trademark Office ("**USPTO**") under Registration No. 0946023 for "supplying drivers to drive automobiles from location to location;" AD Design (Reg. No. 3160871) for "vehicle delivery services;" and the pending applications for AUTO DRIVEAWAY and Design (Ser. No. 87006454) for:

> "Business advisory services in the field of vehicle delivery and relocation services, truck delivery and relocation services, vehicle storage, vehicle registration and title transfer services, vehicle detailing services; Business assistance, advisory and consulting services in the field of vehicle delivery and relocation services, truck delivery and relocation services, vehicle storage, vehicle registration and title transfer services, vehicle detailing services; Business consulting, management, and planning services in the field of vehicle delivery and relocation services, truck delivery and relocation services, vehicle storage, vehicle registration and title transfer services, vehicle detailing services; Business management services, namely, administration of business engaged in vehicle delivery and relocation services, truck delivery and relocation services, vehicle storage, vehicle registration and title transfer services, vehicle detailing services; Business management in the field of vehicle delivery and relocation services, truck delivery and relocation services, vehicle storage, vehicle registration and title transfer services, vehicle detailing services; Business management advisory services relating to franchising; Franchising, namely, consultation and assistance in business management, organization and promotion; Franchising, namely, offering business management assistance in the establishment and/or operation of vehicle delivery and relocation services, truck delivery and relocation services, vehicle storage, vehicle registration and title transfer services, vehicle detailing services; Monitoring services for business purposes to ascertain the geographic locations of movable objects, namely, motor vehicles and individuals; Offering business management assistance in the establishment and/or operation of vehicle delivery and relocation services, truck delivery and relocation services, vehicle storage, vehicle registration and title transfer services, vehicle detailing services; Providing public sector contract vehicle management; Providing tracking services and information concerning tracking of assets in transit, namely, vehicles, trailers, drivers, cargo and delivery containers for business inventory purposes; Services rendered by a franchisor, namely, assistance in the running or management of industrial or commercial enterprises; State vehicular registration and title transfer;

AUTO DRIVEAWAY and Design (Ser. No. 87006463) for "Automobile cleaning and car washing; Automobile lubrication; Automobile body repair and finishing for others; Automotive maintenance and repair; Automotive oil change services; Mechanic services; Repair or maintenance of two-wheeled motor vehicles; Tire rotating and balancing; Vehicle cleaning; Vehicle detailing; Vehicle washing; Automobile repair and maintenance; Vehicle maintenance and repair" and

AUTO DRIVEAWAY and Design (Ser. No. 87006470) for "car transport; Freight transportation by truck; Freight and transport brokerage; Freight train transport; Freighting services; Physical relocation services for trucks and trailers belonging to others; Physical storage of motor vehicles; Providing customized driving directions; Providing information concerning collection and delivery of assets in transit, namely, vehicles, trailers, drivers, cargo and delivery containers; Transport by man-powered vehicles; Truck hauling; Truck transport; Trucking services, namely, hauling of automobiles and trucks; Vehicle-driving services; Hired car transport; Motor vehicle sharing services, namely, providing temporary use of motor vehicles."

15.    Plaintiff Auto Driveaway also owns certain other trademarks and service marks used in association with its businesses which are protected by common law (registered, pending, and common law marks collectively, the "**Auto Driveaway Marks**.")  Auto Driveaway has used the Auto Driveaway Marks consistently and pervasively, adding more modern designs through the years (additional Marks are shown in the table below).  True and correct copies of Auto Driveaway's registration certificates are attached to this Verified Complaint at Exhibit A.



 

16.    Plaintiff Auto Driveaway has built a unique reputation and public recognition for the quality products and services that it provides under the Auto Driveaway Trade Name and Auto Driveaway Marks.  It has developed unique methods and techniques for establishing and operating Auto Driveaway offices. These methods and operations are offered to franchisees pursuant to their Franchise Agreements and related operations manuals ("**Auto Driveaway System**").

17.    The Auto Driveaway Trade Name, Marks, and System are strongly and highly distinctive.  Plaintiff Auto Driveaway has expended substantial time, money, and effort to develop the Auto Driveaway concept and has acquired substantial goodwill in the industry.

**B.    Defendant Corbett's AD Richmond Is An Auto Driveaway Franchisee**

18.    Defendant Corbett has been working for or has owned an Auto Driveaway franchise for over 20 years.  Corbett began working for his stepfather's Auto Driveaway franchise in the 1990s and later bought that business.

19.    In 2011, Defendant Corbett formed his company, AD Richmond, to purchase his stepfather's Richmond, VA Auto Driveaway franchise.  A true and accurate copy of the Franchise Agreement between Auto Driveaway and AD Richmond for the Virginia franchise is attached as Exhibit B.

20.     In 2011, Corbett's company, AD Richmond, also purchased an Auto Driveaway franchise in Nashville, TN.  A true and accurate copy of the Franchise Agreement between Auto Driveaway and AD Richmond for the Tennessee franchise is attached as <u>Exhibit C.</u>

21.     In 2013, Corbett's company, AD Richmond, purchased an Auto Driveaway franchise in Cleveland, OH.  A true and accurate copy of the Franchise Agreement between Auto Driveaway and AD Richmond for the Ohio franchise is attached as <u>Exhibit D.</u>

22.     Through the Franchise Agreements, Plaintiff Auto Driveaway provided AD Richmond a limited license to use the Auto Driveaway System for opening and operating an Auto Driveaway office.  In addition, Auto Driveaway granted Defendant AD Richmond permission to use the Auto Driveaway System, Marks, Trade Name, and access to confidential information to operate a franchised office according to the terms of the Franchise Agreements.

### C.     Plaintiff's Proprietary Technology: AD Direct, AD360, and AD Driver 360

23.     For over a decade, Auto Driveaway's primary operational software was a custom designed proprietary program known as AD Direct.  This was the software that all offices used to manage moves and otherwise operate their businesses.

24.     Over the past several years, Auto Driveaway has spent vast sums to upgrade AD Direct to a re-branded and improved program known as AD360.  Debuted in the summer of 2014, AD 360 has enhanced features and expansion capabilities.

25.     Sometime later, after Auto Driveaway was using its AD360 software, Defendant Corbett introduced Auto Driveaway to a software development company/hosting service in Virginia.  In 2015, Auto Driveaway engaged this software development company/hosting service in a limited capacity.

26.     In the summer of 2015, Auto Driveaway expanded its engagement with the software development company.  That company assigned a particular developer to create a mobile application for Auto Driveaway's AD360 program.  This mobile application is what became AD Driver 360.

27.     Over the course of that year (2015) and since that time, the software development company began providing hosting services and that same particular developer provided development services on a regular basis to Auto Driveaway.  Specifically, they provided updates and fixes to the AD360 program while also developing the AD Driver 360 mobile application.

28.     Defendant Corbett has been actively involved in the development of new technology and services for Auto Driveaway.  Over the years, he worked closely with Auto Driveaway to expand its offerings.  In one case, Defendant Corbett requested a revised customer module and Auto Driveaway paid its developer to create one.

### D.     Auto Driveaway Is Sold And Enjoys Rapid Growth

29.     In December, 2014 Auto Driveaway was purchased by a group of private investors.  The new owners fostered Auto Driveaway's growth initiatives and promptly invested in updating technology and service offerings.

30.     During the past five years, Auto Driveaway purchased 11 franchised locations from prior franchisee owners and converted them to company-owned offices.  The Auto Driveaway system has enjoyed rapid growth in sales during this time.

31.     Defendant Corbett's franchisee company, AD Richmond, currently has the highest sales of any franchisee in the Auto Driveaway system.  Corbett has expressed interest in buying additional Auto Driveaway franchise locations.

**E.     Corbett Pitches His Competing Venture to Auto Driveaway Customers**

32.     Frustrated at not being able to purchase additional franchise locations, at some point during the past year (2018), Corbett stopped cooperating with Auto Driveaway and surreptitiously began creating his own competing venture.

33.     In October 2017, unbeknownst to Plaintiff Auto Driveaway, Defendant Corbett purchased the domain, www.innovauto.com.  (Exhibit E.)

34.     In November 2017, believing that Defendant AD Richmond was substantially in compliance with its Franchise Agreements, which were set to expire on January 31, 2018, Auto Driveaway offered AD Richmond renewals of its three Franchise Agreements.  (Exhibit F.)

35.     Later in November 2017, Defendant Corbett asked for an in-person meeting with Rodney Ruth, President and CEO of Auto Driveaway, to discuss various matters.  Mr. Ruth met with Defendant Corbett in AD Richmond's offices on or about November 27, 2017.  During that meeting, Corbett informed Mr. Ruth that he had a plan for a new customer, but could not disclose the details because he had signed a non-disclosure agreement with the customer.  Also during that meeting, Defendant Corbett expressed frustration with the franchise system.

36.     The Franchise Agreements grant a non-exclusive license to operate a business under the Auto Driveaway Marks.  In addition, all goodwill from those operations inures to the franchisor's benefit. (Exhs. B, C, and D at ¶ 6.1.)  Further, the Franchise Agreements provide that the Franchisor is a third party beneficiary to non-disclosure agreements entered into by the franchisee. (Exhs. B, C, and D at Exhibit G.)

37.     The Franchise Agreements also require Franchisees to disclose any new technology to the Franchisor.  (Exhs. B, C, and D at ¶ 12.5.)

38. There is no legitimate reason for Defendant Corbett to withhold business information from the Franchisor.

39. On or about December 8, 2017, Mr. Ruth spoke on the telephone with Defendant Corbett. Corbett said that he was pitching Amazon for truck services and that the projects were starting in January 2018. Mr. Ruth understood that this was for the benefit of Auto Driveaway.

40. During that December 8, 2017 telephone call, Mr. Ruth, still believing that the project was for the benefit of the Auto Driveaway system, offered to provide any support necessary, including purchasing vehicles and trailers for multiple locations.

41. Later that month, on or about December 27, 2017, unbeknownst to Plaintiff Auto Driveaway, Defendant Corbett formed a new limited liability company in Virginia, Defendant InnovAuto.

42. In January 2018, Mr. Ruth, unaware of the formation of Defendant InnovAuto, followed up to offer assistance to Corbett. Corbett, however, did not respond.

43. On January 31, 2018, Corbett did not execute his renewal Franchise Agreements; instead, he further executed his covert plan to exploit the Unauthorized App for his own benefit.

44. On or about March 15, 2018, Defendants Corbett, AD Richmond, or those acting in concert with them, hired Auto Driveaway's software development company – and the very same developer who was working on the AD Driver 360 mobile application. The parties operated under a Statement of Work ("SOW"). The SOW was to develop the Unauthorized App. (Exhibit G.)

45. Essentially, the Unauthorized App was being designed to inspect vehicles via a mobile device in the field and produce condition reports. This is the same concept that Auto

Driveaway hired the developer to create as AD Driver 360. Auto Driveaway's version is a mobile application that connects to the existing AD360 technology.

46.     By April 12, 2018, Defendants Corbett, AD Richmond, or those acting in concert with them, continued developing the Unauthorized App. The development summary was already on "Version 1.1.4 4/12/2018." This development summary included the following features: "Login Roles & Permissions; Field Reporting Requirements; Photo Handler; Assessment Reports and Services;" (Exhibit H.)

47.     Crucially, the "Statement of Purpose" includes the following language: "Utilize the ***AD Richmond – [Auto Driveaway Customer]*** Infrastructure to capture the bridging requirements." *(emphasis added).* It also states that "[e]xpectations are for the system to perform within a pre-existing environment while acting as a bridging technology between fleet management companies through licensing." (Exhibit H.)

48.     Plaintiff Auto Driveaway has been conducting vehicle inspections and generating condition reports for years.

49.     Plaintiff Auto Driveaway began developing its AD Driver 360 mobile application in 2015. A crucial feature of the AD Driver 360 mobile application is to enhance the ability for drivers to conduct vehicle inspections and generate condition reports in the field. (Exhibit I.)

50.     A comparison of the two mobile applications' features is striking. Both begin with log in roles and permissions; both contain a photo handler/capability; both have the ability for clients to create contracts in the application; both provide for a vehicle inspection/condition report; both collect general vehicle information; both contain a checklist for creating a damage report; both use a mobile device's camera to record damage; and both input this information into a damage report.

51.     Defendants did not wait for the delivery of the Unauthorized App to prepare to sell it.

52.     At some point, Defendants created an "Auto Driveaway Service Overview" sales brochure.  This sales brochure features Auto Driveaway's Marks and a description of Auto Driveaway's history and service offerings.  There is a section titled "Coming Soon" that states: "Soon to be releasing our proprietary InnovAuto software that scans the units and releases real-time valuations, considering cosmetic/mechanical damage, local vehicle market pricing, and repair costs."  (Exhibit J.)

53.     None of the Defendants submitted this sales brochure to Auto Driveaway for approval.

54.     Plaintiff Auto Driveaway has never granted Defendants permission to use the mark INNOVAUTO in association with the Auto Driveaway Marks.

55.     On or about June 28, 2018, Defendants or those in concert with them posted a video commercial on YouTube.  As of July 18, 2018, that video was available online at: https://www.youtube.com/watch?v=sgPYkql7nTg and titled: InnovAuto5.  Screenshots of the YouTube video are attached hereto as (Exhibit K.)

56.     Defendants are falsely and improperly representing to the public that Auto Driveaway and Defendant InnovAuto are related.  (Exhibit K.)

57.     The YouTube Video opens with a large AUTO DRIVEAWAY trademark and falsely offers services and products as being from Auto Driveaway and Defendant InnovAuto.

58.     Plaintiff Auto Driveaway's logo contains a "pin drop" feature as can be seen on its website, https://autodriveaway.com/, and below:



The unauthorized YouTube video created and uploaded by Defendants also uses these "pin drops" throughout the video. (Exhibit K.)

59.     The YouTube Video specifically targets customers at locations where Auto Driveaway has offices, including Illinois.

60.     The YouTube Video contains a screen showing a condition report with the Vehicle Identification Numbers of at least two actual vehicles that were moved by Auto Driveaway. (Exhibit K.)

61.     The YouTube Video shows the marks INNOVAUTO and INNOVAUTO and Design in association with Plaintiff Auto Driveaway and Auto Driveaway's Marks.

62.     The YouTube Video references "our INNOVAUTO site."  Plaintiff Auto Driveaway has not authorized the affiliation of Auto Driveaway with any website associated with Defendant InnovAuto or any website that uses the mark INNOVAUTO. (Exhibit K.)

63.     Defendants Corbett and AD Richmond were involved in designing and planning the AD Driver 360 mobile application for Auto Driveaway.  Their employees tested the AD Driver 360 mobile application during development and gave feedback to Auto Driveaway for the developer.

64.     July 11, 2018 was the scheduled launch date for the latest version of the AD Driver 360 mobile application.

65.     Defendant Corbett scheduled a meeting for July 10, 2018 with one of Auto Driveaway's largest customers at which he planned to pitch a multi-phase proposal for his new company with a Phase 1 value in excess of $500,000.  That proposal is branded with Auto

Driveaway Marks and prominently serves up the INNOVAUTO and Design mark as providing "Solutions" to the customer's "Challenges." Among the "solutions" proposed to be provided by Defendant InnovAuto are services currently offered by Auto Driveaway. (Exhibit L.)

66.     Defendant Corbett failed to notify Auto Driveaway about this meeting or that he intended to co-brand Auto Driveaway services with Defendant InnovAuto.

67.     On July 11, 2018, Auto Driveaway launched the latest version of its AD Driver 360 mobile application. (Exhibit M.)

68.     The AD Driver 360 mobile application contains many of the same features that are described in the SOWs for the Unauthorized App.

69.     The Unauthorized App and related technology were developed or are being developed during the term of Defendant AD Richmond's Franchise Agreements and the plain reading of those Agreements requires Defendants to "fully and promptly disclose to [Auto Driveaway] all ideas, concepts, methods, and techniques relating to the development and/or operation of the Franchise conceived or developed by you and/or your Affiliates or employees during the term of this Agreement." Defendants have refused to disclose any information about the Unauthorized App to Auto Driveaway.

70.     Defendant Corbett claims that he owns the Unauthorized App and related technology.

71.     The Franchise Agreement clearly addresses ownership of Improvements. "All such materials created or conceived by you or in collaboration with others during the term of this Agreement shall be our sole and exclusive property without further consideration to you."

72.     Plaintiff Auto Driveaway asserts that it owns the Unauthorized App.

73.     There is an actual controversy between the parties.

**F.      AD Richmond and Corbett Are Violating The Franchise
Agreements and Wrongfully Competing with Auto Driveaway**

74.      Defendants Corbett as Guarantor, and AD Richmond are improperly competing with Auto Driveaway in breach of the Franchise Agreements.

75.      Pursuant to the franchise relationship, Auto Driveaway issues email addresses for employees working at the franchisee locations with the "autodriveaway.com" address.  It issued email addresses for employees at Defendant AD Richmond.

76.      Defendants AD Richmond and Corbett are using their autodriveaway.com e-mail addresses to actively pursue a competing business on behalf of Corbett and Defendant InnovAuto.  (Exhibit N.)

77.      As recently as the week that this lawsuit was filed, Defendants Corbett and AD Richmond ordered business cards from Auto Driveaway for a new employee.  This was in the ordinary course of business.

78.      Plaintiff Auto Driveaway has since learned that this same Auto Driveaway Richmond employee was also issued an email address by Defendant AD Richmond at Defendant InnovAuto's domain.

1)      Corbett and AD Richmond are Improperly Using the
Licensed Marks and Auto Driveaway System.

79.      In the Franchise Agreements, Defendants Corbett and AD Richmond acknowledged that Auto Driveaway developed a system for establishing, operating, and promoting "for hire" motor carrier offices specializing in secondary movement of automobiles, vans, trucks, and other vehicles for individuals and corporations, which includes the use and license of certain valuable service marks such as AUTO DRIVEAWAY, AD Design, and AUTO DRIVEAWAY and Design.  (Exhs. B, C, and D at p. 1.)

80.     Plaintiff Auto Driveaway granted, and Defendant AD Richmond accepted, the "non-exclusive right to operate a "for hire" motor carrier office utilizing the Auto Driveaway System and the Licensed Marks at the Franchised Office within the Franchise Territory." (Exhs. B, C, and D at ¶ 2.1.)

81.     Defendants AD Richmond and Corbett expressly acknowledged Auto Driveaway's rights in and to the Licensed Marks attached to the Franchise Agreements as Exhibit B, and agreed "not to represent in any manner that [Defendants AD Richmond and Corbett] have acquired any ownership rights in the Licensed Marks." (Exhs. B, C, and D at ¶ 6.1.) Defendants AD Richmond and Corbett further agreed that any and all goodwill associated with the Auto Driveaway System and identified by the Licensed Marks is Auto Driveaway's property and shall inure directly and exclusively to Auto Driveaway's benefit. (Exhs. B, C, and D at ¶ 6.1.)

82.     Defendants AD Richmond and Corbett agreed that they would display and use only the Licensed Marks and Auto Driveaway System as required in the Franchise, that they would not use the Licensed Marks without Auto Driveaway's prior written consent, and that during the term of the Franchise Agreements and thereafter, they would not, directly or indirectly, infringe upon Auto Driveaway's rights with respect to the Licensed Marks. "You agree not to use any other marks except with our prior written consent." (Exhs. B, C, and D at ¶ 6.2.)

83.     Despite these promises, Defendants Corbett and AD Richmond are associating the INNOVAUTO mark with Auto Driveaway's Marks and their Franchises without Auto Driveaway's consent to promote the competing Defendant InnovAuto's business.

84.     Defendants Corbett and AD Richmond are misusing Auto Driveaway's Marks by associating them with an unauthorized mark.

2)     Corbett and AD Richmond Are Operating Outside of Their Territories.

85.     AD Richmond's Franchise Territories, as described in the Franchise Agreements, are: (1) Richmond, Virginia and several Core Based Statistical Areas ("CBSA") in Virginia; (2) Nashville, Tennessee and several CBSA's in Tennessee; and (3) Cleveland, Ohio and 5 counties in Ohio.  (Exhibit A to each of the Franchise Agreements attached hereto as Exhs. A, B, and C.)

86.     Nevertheless, Defendants AD Richmond and Corbett have signed a lease for two buildings in Manteca, California, with the stated use being "general offices, warehouse/shop and yard ***for an automobile shipping company***, which shall include storage of new/used (no in-operable vehicles)."  A true and correct copy of the lease signed by Mr. Corbett on behalf of Defendant AD Richmond is attached as (Exhibit O.)  Defendants AD Richmond and Corbett do not have authority to open an Auto Driveaway location in California, and the two leased buildings are within 50 miles of an already existing Auto Driveaway location.

87.     Defendants AD Richmond and Corbett are actively attempting to lease more locations to operate their competing businesses and to compete with Auto Driveaway.  In correspondence with a realtor, Defendant Corbett states, "… we are looking at leasing double digit locations across the US…."  (Exhibit P.)

3)     Corbett and AD Richmond Are In Breach of the Standards of Operation for the Franchise Agreements.

88.     Defendants Corbett and AD Richmond agreed to strictly conform to the Standards of Operation for their franchises. (Exhs. B, C, and D at ¶ 8.1.)

89.     Defendants Corbett and AD Richmond agreed that in all their dealings with Auto Driveaway, they would adhere to the "highest possible standards of professional conduct,

honesty, integrity, ethical behavior, dependability, good faith, and fair dealing."   (Exhs. B, C, and D at ¶ 8.10.)

90.     Instead, Defendants Corbett and AD Richmond engaged in a covert campaign to convert for Corbett and Defendant InnovAuto the benefits of Auto Driveaway's decades of goodwill associated with its Marks and System.

91.     When Plaintiff Auto Driveaway asked Defendant Corbett about his plans, he refused to comply with the specific terms of his Franchise Agreement.  In derivation of his legal and ethical obligations, Defendant Corbett has used Auto Driveaway resources for the benefit of his competing business.

92.     Defendants Corbett and AD Richmond have been dishonest in their dealings with the franchisor in breach of the Franchise Agreements.

93.     By co-branding Defendant InnovAuto's trademarks with Auto Driveaway Marks, Defendants Corbett and AD Richmond have breached their obligations of good faith and fair dealing to the Franchisor and to the Auto Driveaway customers, exposing Auto Driveaway to loss of business, customers, and goodwill.

94.     Under the Franchise Agreements, Defendants Corbett and AD Richmond are prohibited from offering or selling any products or services not authorized by the Franchisor.

95.     Auto Driveaway has not authorized the offering or selling of anything from Defendant InnovAuto.  Auto Driveaway has not authorized any use of the mark INNOVAUTO.

       4)     Defendants Corbett and AD Richmond Are in Breach of the Confidentiality, Non-Disclosure, and Non-Competition Obligations of the Franchise Agreements.

96.     Defendants Corbett and AD Richmond agreed not to disclose any Confidential Information provided to them during the course of the franchise relationship.   They further agreed that they "shall not use the Confidential Information in any other business capacity; …."

They also agreed that they "… shall not contest [Auto Driveaway's] right to exclusively use the Confidential Information."  (Exhs. B, C, and D at ¶ 12.1.)

97.     The term "Confidential Information" includes among other things, "… ideas, proprietary software, research and development, know-how, business and marketing plans and proposals.…" (Exhs. B, C, and D at ¶ 1.)

98.     During the term of the Franchise Agreements, Defendants AD Richmond and Corbett agreed that they would not:

> (a)     have any direct or indirect interest as a disclosed or beneficial owner in any Competitive Business;
> (b)     perform services as a director, officer, manager, employee, consultant, representative, agent, or otherwise for a Competitive Business anywhere; or
> (c)     divert or attempt to divert any business related to the Franchise or the Auto Driveaway System directly or indirectly to a Competitive Business.

(Exhs. B, C, and D at ¶ 12.2.)

99.     The term "Competitive Business" "means operating "for-hire" motor carrier businesses operating as either a common carrier or a contract carrier or any business which operates or grants franchises or licenses to others to operate a business that provides similar services and/or products as those offered by us.  Competitive Business shall not include another Auto Driveaway Office operated by you."  (Exhs. B, C, and D at p. 2.)  *(emphasis added.)*

100.     Upon the termination, assignment, or transfer of the Franchise Agreements for any reason, Defendants AD Richmond and Corbett agreed that they would not:

> [F]or a period of two (2) years after such termination, assignment, or transfer […] engage, directly or indirectly, as an owner, operator, or in any managerial capacity, in any Competitive Business, at or within a fifty (50) mile radius of the former Franchised Territory or any other Territory with an Auto Driveaway Office other than as an authorized franchise owner of another Auto Driveaway Office.

(Exhs. B, C, and D at ¶ 12.2.)

101.    Defendants AD Richmond and Corbett agreed that the purpose of the covenant in paragraph 12.3 of the Franchise Agreements was not to deprive them of their livelihood and that enforcing the covenant would not deprive them of their livelihood.  (Exhs. B, C, and D at ¶ 12.2.)

102.    Defendants AD Richmond and Corbett agreed that the purpose of the covenant in paragraph 12.3 of the Franchise Agreements is to protect the goodwill and interest of the Auto Driveaway System.  (Id.)

103.    The obligations under Section 12 of the Franchise Agreements survive the termination or expiration of the Franchise Agreements, and Defendants AD Richmond and Corbett agreed that Auto Driveaway is entitled to seek injunctive relief against any actual or contemplated breach without posting a bond.  (Exhs. B, C, and D at ¶ 12.4.)  Defendants AD Richmond and Corbett further agreed that they would be liable for Auto Driveaway's costs and attorneys' fees incurred to enforce Section 12 of the Franchise Agreements.

104.    As late as July 2, 2018, Defendants AD Richmond and Corbett represented to Auto Driveaway that the Franchise Agreements are in effect, are continuing on a month-to-month basis, and that they do not intend to compete against Auto Driveaway for two years after their Franchise Agreements expire.

105.    Defendants AD Richmond's and Corbett's actions, however, tell a different story, necessitating the filing of this action and the request for injunctive relief.

       5)    Corbett and AD Richmond Agreed To Disclose All New Concepts to Auto Driveaway; Such Improvements Belong to Auto Driveaway.

106.    In paragraph 12.5 of the Franchise Agreements, Defendants AD Richmond and Corbett agreed as follows:

You shall disclose to us prior to executing this Agreement all copyrighted or other pre-existing materials to which you claim ownership or any other rights. You shall fully and promptly disclose to us all ideas, concepts, methods, and techniques relating to the development and/or operation of the Franchise conceived or developed by you and/or your Affiliates or employees during the term of this Agreement. All such materials created or conceived by you or in collaboration with others during the term of this Agreement shall be [Auto Driveaway's] sole and exclusive property without further consideration to you. You agree to execute any documentation necessary to perfect our ownership rights, including, without limitation, copyright, trademark, and patent applications, assignments, and/or recordings as we may request.

(Exhs. A, B, and C at ¶ 12.5.)

107. Defendants AD Richmond and Corbett have not disclosed the methods, techniques, or source code for the Unauthorized App to Auto Driveaway.

108. Defendants AD Richmond and Corbett have refused to turnover any materials related to the Unauthorized App to Auto Driveaway.

109. Defendants AD Richmond and Corbett are in breach of their obligations to disclose new concepts to the franchisor.

**G.     Corbett is in Breach of the Guaranties.**

110. Defendant Corbett personally guaranteed to Auto Driveaway that he would "punctually pay and perform each and every undertaking, agreement and covenant set forth in the Franchise Agreements," and he agreed to be personally bound by, and personally liable for the breach of each and every provision in the Franchise Agreement. (Exhibit H attached to the Franchise Agreements, which are attached hereto as Exhs. A, B, and C.)

111. Defendant Corbett is responsible for the violations of AD Richmond.

## COUNT I

**Trademark Infringement**
**Lanham Act § 32**
**(Against All Defendants)**

112.    Plaintiff Auto Driveaway incorporates the prior paragraphs 1-111 as if fully set forth here.

113.    Plaintiff Auto Driveaway owns the Marks described above in Paragraphs 14-15 and the substantial goodwill associated therewith.

114.    Plaintiff Auto Driveaway's trademark registrations set forth in Exhibit A are prima facie evidence of their validity and provide constructive notice to others of Auto Driveaway's claim of ownership.    15 U.S.C. § 1115, *et seq.*    Further, in the Franchise Agreements, Defendants had actual knowledge of Auto Driveaway's claims of ownership.

115.    Under the Franchise Agreements, Defendant AD Richmond is a mere licensee with a right to use the Auto Driveaway's Marks and the associated goodwill, but only to the extent permitted by the Franchise Agreements.    Defendant Corbett is a Guarantor of the Franchise Agreements.

116.    Defendant AD Richmond's violations of the Franchise Agreement and failure to properly operate the business in compliance with the Auto Driveaway System, constitutes a misappropriation of Auto Driveaway's Marks and Trade Name.    Defendant Corbett is a Guarantor of the Franchise Agreements.

117.    Defendants Corbett and AD Richmond are currently using the Auto Driveaway Marks in an unauthorized manner to promote Defendant InnovAuto.  See Exhs. G, H, K, L. N. attached hereto.

118.     Defendant InnovAuto has no rights to use the Auto Driveaway Marks in any manner.

119.     Defendant InnovAuto is using the Auto Driveaway Marks in a manner to create a false association between the companies as to the source of products and services.

120.     Defendants' improper use of the Auto Driveaway Marks causes immediate and irreparable harm to Auto Driveaway due to its loss of control over the quality of goods and services advertised, offered, and provided under its Marks.  The loss of Auto Driveaway's right to control the use of the Marks and the reputation of the services and goods provided in connection therewith is real and substantial.

121.     Defendants' use of the Auto Driveaway Marks in association with Defendant InnovAuto's marks INNOVAUTO and INNOVAUTO and Design of Vehicle does deceive and cause confusion, and is likely to continue to cause confusion as to the source of the products and services offered by Defendants.

122.     Defendants' unauthorized and continued use of Auto Driveaway's Marks has benefitted Defendants and they have profited from their improper use.

123.     Plaintiff Auto Driveaway has incurred damages from Defendants' unauthorized use of the Auto Driveaway Marks.

124.     Defendants are knowingly willfully infringing upon Auto Driveaway's Trade Name and Marks.

125.     Defendants' improper use of the Auto Driveaway Marks constitutes trademark and service mark infringement under the Lanham Act, 15 U.S.C. § 1114(1).  Defendants' infringing conduct is willful infringement under 15 U.S.C. § 1114(1) and constitutes an exceptional case under 15 U.S.C. § 1117(a).

WHEREFORE, Auto Driveaway respectfully requests a judgment in favor of Auto Driveaway and against Defendants Corbett, InnovAuto, and AD Richmond as follows:

a) An injunction requiring Defendants to make full disclosure of all uses made of the Auto Driveaway Marks in association with Defendant InnovAuto or the INNOVAUTO marks;

b) An injunction requiring the removal of the YouTube video and any other uses of the INNOVAUTO in association with the Auto Driveaway Marks;

c) Impounding of all infringing materials made or used in violation of the Franchise Agreements;

d) An injunction barring Defendants from directly or indirectly misusing the Auto Driveaway Marks;

e) A joint and several award of compensatory damages, treble damages, Defendants' profits, interest, Auto Driveaway's costs and reasonable attorneys' fees; and

f) All such other relief the Court deems just and appropriate.

## COUNT II

### Trademark Infringement
### Common Law
### (All Defendants)

126. Plaintiff Auto Driveaway incorporates the prior paragraphs 1-125 as if fully set forth here.

127. Plaintiff Auto Driveaway owns the Marks described above in Paragraph 14-15 and the substantial goodwill associated therewith.

128. Under the Franchise Agreements, Defendant AD Richmond is a mere licensee with a right to use the Auto Driveaway's Marks and the associated goodwill, but only to the extent permitted by the Franchise Agreements. Defendant Corbett is a Guarantor of the Franchise Agreements.

129.     Defendant AD Richmond's violations of the Franchise Agreement and failure to properly operate the business in compliance with the Auto Driveaway System, constitutes a misappropriation of Auto Driveaway's Marks and Trade Name.   Defendant Corbett is a Guarantor of the Franchise Agreements.

130.     Defendants Corbett and AD Richmond are currently using the Auto Driveaway Marks in an unauthorized manner to promote Defendant InnovAuto.   Exhs. G, H, K, L. N. attached hereto.

131.     Defendant InnovAuto has no rights to use the Auto Driveaway Marks in any manner.

132.     Defendants' use of the Auto Driveaway Marks in association with Defendant InnovAuto's marks INNOVAUTO and INNOVAUTO and Design of Vehicle does deceive and cause confusion, and is likely to continue to cause confusion as to the source of the products and services offered by Defendants.

133.     Defendant InnovAuto is using the Auto Driveaway Marks in a manner to create a false association between the companies as to the source of products and services.

134.     Defendants' improper use of the Auto Driveaway Marks causes immediate and irreparable harm to Auto Driveaway due to its loss of control over the quality of goods and services advertised, offered, and provided under its Marks.   The loss of Auto Driveaway's right to control the use of the Marks and the reputation of the services and goods provided in connection therewith is real and substantial.

135.     Defendants' improper use of the Auto Driveaway Marks constitutes trademark and service mark infringement under common law.

WHEREFORE, Auto Driveaway respectfully requests a judgment in favor of Auto Driveaway and against Defendants Corbett, InnovAuto, and AD Richmond as follows:

a) An injunction requiring Defendants to make full disclosure of all uses made of the Auto Driveaway Marks in association with Defendant InnovAuto or the INNOVAUTO marks;

b) An injunction requiring the removal of the YouTube video and any other uses of the INNOVAUTO in association with the Auto Driveaway Marks;

c) Impounding of all infringing materials made or used in violation of the Franchise Agreements;

d) An injunction barring Defendants from directly or indirectly misusing the Auto Driveaway Marks;

e) A joint and several award of compensatory damages, Defendants' profits, interest, Auto Driveaway's costs and reasonable attorneys' fees; and

f) All such other relief the Court deems just and appropriate.

## COUNT III

### False And Deceptive Advertising
### Lanham Act § 43 (a)(1)(b)
### (All Defendants)

136.    Plaintiff Auto Driveaway incorporates the prior paragraphs 1-135 as if fully set forth here.

137.    Auto Driveaway owns the Marks described above in Paragraph 14-15 and the substantial goodwill associated therewith.

138.    Under the Franchise Agreements, Defendant AD Richmond is a mere licensee with a right to use the Auto Driveaway's Marks and the associated goodwill, but only to the extent permitted by the Franchise Agreements.

139.     Defendant AD Richmond's violations of the Franchise Agreement and failure to properly operate the business in compliance with the Auto Driveaway System, constitutes a misappropriation of Auto Driveaway's Marks and Trade Name.

140.     Defendants Corbett and AD Richmond are currently using the Auto Driveaway Marks in an unauthorized manner to promote Defendant InnovAuto.  Exhs. G, H, K, L. N. attached hereto.

141.     Defendant InnovAuto has no rights to use the Auto Driveaway Marks in any manner.

142.     Defendants' use of the Auto Driveaway Marks in association with Defendant InnovAuto's marks INNOVAUTO and INNOVAUTO and Design of Vehicle does deceive and cause confusion, and is likely to continue to cause confusion as to the source of the products and services offered by Defendants.

143.     Defendants are making a false statement of fact about Defendant InnovAuto's business and products by associating them with Auto Driveaway's Marks.

144.     Defendants' deception is material and likely will influence consumer decisions when purchasing InnovAuto's and Auto Driveaway's business or products.

145.     Defendants have caused their false statements to be placed into interstate commerce.  Indeed, Defendants have posted a YouTube video holding out to the public that Defendant InnovAuto and Auto Driveaway are affiliated.  Defendants are attempting to capitalize on the years of goodwill Auto Driveaway has created in its Marks.

146.     Defendants' improper use of the Auto Driveaway Marks causes immediate and irreparable harm to Auto Driveaway due to its loss of control over the quality of goods and services advertised, offered, and provided under its Marks.  The loss of Auto Driveaway's right

to control the use of the Marks and the reputation of the services and goods provided in connection therewith is real and substantial.

147. Defendants are knowingly, willfully infringing upon Auto Driveaway's name and Marks.

148. Defendants intend to profit by using the Auto Driveaway name and marks to divert customers from Auto Driveaway to Defendants' new company, InnovAuto, so that the customers purchase services from Defendants and not Auto Driveaway.

149. Defendants' use of the Auto Driveaway Marks violates the Lanham Act, 15 U.S.C. § 1125.

WHEREFORE, Auto Driveaway respectfully requests a judgment in favor of Auto Driveaway and against Defendants Corbett, InnovAuto, and AD Richmond as follows:

a) An injunction requiring Defendants to make full disclosure of all uses made of the Auto Driveaway Marks in association with Defendant InnovAuto or the INNOVAUTO marks;

b) An injunction requiring the removal of the YouTube video and any other uses of the INNOVAUTO in association with the Auto Driveaway Marks;

c) Impounding of all infringing materials made or used in violation of the Franchise Agreements;

d) An injunction barring Defendants from directly or indirectly misusing the Auto Driveaway Marks and further engaging in false and deceptive advertising;

e) A joint and several award of compensatory damages, treble damages, Defendants' profits, interest, Auto Driveaway's costs and reasonable attorneys' fees; and

f) All such other relief the Court deems just and appropriate.

## COUNT IV

**False Designation of Origin
Lanham Act § 43 (a)(1)(a)
(All Defendants)**

150.    Plaintiff Auto Driveaway incorporates the prior paragraphs 1-149 as if fully set forth here.

151.    Plaintiff Auto Driveaway owns the Marks described above in Paragraph 14-15 and the substantial goodwill associated therewith.

152.    Under the Franchise Agreements, Defendant AD Richmond is a mere licensee with a right to use the Auto Driveaway's Marks and the associated goodwill, but only to the extent permitted by the Franchise Agreements.

153.    Defendant AD Richmond's violations of the Franchise Agreement and failure to properly operate the business in compliance with the Auto Driveaway System, constitutes a misappropriation of Auto Driveaway's Marks and Trade Name.

154.    Defendants Corbett and AD Richmond are currently using the Auto Driveaway Marks in an unauthorized manner to promote Defendant InnovAuto.   Exhs. G, H, K, L. N. attached hereto.

155.    Defendant InnovAuto has no rights to use the Auto Driveaway Marks in any manner.

156.    Defendants' use of the Auto Driveaway Marks in association with Defendant InnovAuto's marks INNOVAUTO and INNOVAUTO and Design of Vehicle does deceive and cause confusion, and is likely to continue to cause confusion as to the source of the products and services offered by Defendants.

157.    Defendants are making a false statement of fact about Defendant InnovAuto's business and products by associating them with Auto Driveaway's Marks.

158.    Defendants' deception is material and likely will influence consumer decisions when purchasing InnovAuto's and Auto Driveaway's business or products.

159.    Defendants have caused their false statements to be placed into interstate commerce.  Indeed, Defendants have posted a YouTube video holding out to the public that Defendant InnovAuto and Auto Driveaway are affiliated.  Defendants are attempting to capitalize on the years of goodwill Auto Driveaway has created in its Marks.

160.    Defendants' improper use of the Auto Driveaway Marks causes immediate and irreparable harm to Auto Driveaway due to its loss of control over the quality of goods and services advertised, offered, and provided under its Marks.  The loss of Auto Driveaway's right to control the use of the Marks and the reputation of the services and goods provided in connection therewith is real and substantial.

161.    Defendants are knowingly, willfully infringing upon Auto Driveaway's name and Marks.

162.    Defendants intend to profit by using the Auto Driveaway name and marks to divert customers from Auto Driveaway to Defendants' new company, InnovAuto, so that the customers purchase services from Defendants and not Auto Driveaway.

163.    Defendants' use of the Auto Driveaway Marks violates the Lanham Act, 15 U.S.C. § 1125.

WHEREFORE, Auto Driveaway respectfully requests a judgment in favor of Auto Driveaway and against Defendants Corbett, InnovAuto, and AD Richmond as follows:

a)    An injunction requiring Defendants to make full disclosure of all uses made of the Auto Driveaway Marks in association with Defendant InnovAuto or the

INNOVAUTO marks;

b) An injunction requiring the removal of the YouTube video and any other uses of the INNOVAUTO in association with the Auto Driveaway Marks;

c) Impounding of all infringing materials made or used in violation of the Franchise Agreements;

d) An injunction barring Defendants from directly or indirectly misusing the Auto Driveaway Marks or engaging in acts of false designation;

e) A joint and several award of compensatory damages, treble damages, Defendants' profits, interest, Auto Driveaway's costs and reasonable attorneys' fees; and

f) All such other relief the Court deems just and appropriate.

## COUNT V
### Breach of Contract
### (Corbett and AD Richmond)

164.    Plaintiff Auto Driveaway incorporates the prior paragraphs 1-163 as if fully set forth here.

165.    Defendant AD Richmond is a party to the Franchise Agreement for the Richmond, VA franchise.

166.    Defendant AD Richmond has breached that Franchise Agreement by a) misusing Auto Driveaway's Marks and Auto Driveaway System; b) violating the Standards of Operation; c) Disclosing Confidential Information, d) Competing with the Franchisor; e) Failing to disclose New Concepts to the Franchisor and failing to turn over such New Concepts to the Franchisor.

167.    Defendant AD Richmond is a party to the Franchise Agreement for the Nashville, TN franchise.

168.    Defendant AD Richmond has breached that Franchise Agreement by a) misusing Auto Driveaway's Marks and Auto Driveaway System; b) violating the Standards of Operation;

c) Disclosing Confidential Information, d) Competing with the Franchisor; e) Failing to disclose New Concepts to the Franchisor and failing to turn over such New Concepts to the Franchisor.

169.     Defendant AD Richmond is a party to the Franchise Agreement for the Cleveland, OH franchise.

170.     Defendant AD Richmond has breached that Franchise Agreement by a) misusing Auto Driveaway's Marks and Auto Driveaway System; b) violating the Standards of Operation; c) Disclosing Confidential Information, d) Competing with the Franchisor; e) Failing to disclose New Concepts to the Franchisor and failing to turn over such New Concepts to the Franchisor.

171.     Defendant AD Richmond is using Auto Driveaway's Trade Name, Marks, associated goodwill to create a false association with Defendant InnovAuto to actively promote a competing business.  (Exhs. G, H, K, L. N.)

172.     As a direct result of Defendant AD Richmond's conduct, Auto Driveaway has lost and/or is imminently threatened with the loss of clients, business, and goodwill, and absent an order from the Court, such clients, business, and goodwill will continue to be wrongfully diverted to Defendant InnovAuto.

173.     Auto Driveaway has performed all of its obligations under the Franchise Agreements.

174.     Defendant AD Richmond's conduct has also caused, and will continue to cause, damages to Auto Driveaway.

WHEREFORE, Auto Driveaway respectfully requests a judgment in favor of Auto Driveaway and against Defendants Corbett, InnovAuto, and AD Richmond as follows:

a)  An injunction requiring Defendants to make full disclosure of all uses made of the Auto Driveaway Marks in association with Defendant InnovAuto or the INNOVAUTO marks;

b)  An injunction requiring the removal of the YouTube video and any other uses of the

INNOVAUTO in association with the Auto Driveaway Marks;

c) Impounding of all infringing materials made or used in violation of the Franchise Agreements;

d) An injunction barring Defendants from directly or indirectly misusing the Auto Driveaway Marks;

e) An injunction barring Defendants from:

    i) misusing Auto Driveaway's Marks and Auto Driveaway System;

    ii) violating the Standards of Operation;

    iii) Disclosing Confidential Information,

    iv) Competing with the Franchisor;

    v) Failing to disclose New Concepts to the Franchisor;

    vi) Failing to turn over such New Concepts to the Franchisor

f) A joint and several award of compensatory damages, treble damages, Defendants' profits, interest, Auto Driveaway's costs and reasonable attorneys' fees; and

g) All such other relief the Court deems just and appropriate.

## COUNT VI
### Breach of Contract – Personal Guaranty
### (Corbett)

175. Plaintiff Auto Driveaway incorporates the prior paragraphs 1-174 as if fully set forth here.

176. Defendant Corbett personally guaranteed to Auto Driveaway that he would "punctually pay and perform each and every undertaking, agreement and covenant set forth in the [Franchise Agreements]," and he agreed to be personally bound by, and personally liable for the breach of each and every provision in the Franchise Agreements. (Exhibit H attached to the Franchise Agreements, which are attached hereto as Exhs. B, C, and D.)

177.     Defendant Jeffrey Corbett is liable and responsible for the breaches and claims set forth in this Verified Complaint.

178.     Defendant Jeffrey Corbett has failed to abide by all of the covenants, representations, and agreements set forth in the Franchise Agreements.

179.     Defendant Jeffrey Corbett's breach of his personal guaranties to Auto Driveaway has also caused, and will continue to cause, damages to Auto Driveaway.

WHEREFORE, Auto Driveaway respectfully requests a judgment in favor of Auto Driveaway and against Defendant Corbett as follows:

a)  An injunction requiring Defendants to make full disclosure of all uses made of the Auto Driveaway Marks in association with Defendant InnovAuto or the INNOVAUTO marks;

b)  An injunction requiring the removal of the YouTube video and any other uses of the INNOVAUTO in association with the Auto Driveaway Marks;

c)  Impounding of all infringing materials made or used in violation of the Franchise Agreements;

d)  An injunction barring Defendants from directly or indirectly misusing the Auto Driveaway Marks;

e)  An injunction barring Defendants from:

   i)   misusing Auto Driveaway's Marks and Auto Driveaway System;

   ii)  violating the Standards of Operation;

   iii) Disclosing Confidential Information,

   iv)  Competing with the Franchisor;

   v)   Failing to disclose New Concepts to the Franchisor;

   vi)  Failing to turn over such New Concepts to the Franchisor

f)  A joint and several award of compensatory damages, treble damages, Defendants' profits, interest, Auto Driveaway's costs and reasonable attorneys' fees; and

g)  All such other relief the Court deems just and appropriate.

**COUNT VII**
**Tortious Interference with Prospective Business Opportunity**
**(All Defendants)**

180.    Plaintiff Auto Driveaway incorporates the prior paragraphs 1-179 as if fully set forth here.

181.    Auto Driveaway franchisees perform various services related to shipping vehicles for various individuals and entities.

182.    In many instances, Plaintiff Auto Driveaway and/or its franchisees have been servicing the same customers for a significant period of time.

183.    Defendants are aware that Plaintiff Auto Driveaway has these business expectancies and relationships with its customers.

184.    Defendants intend to compete with Plaintiff Auto Driveaway in violation of the Franchise Agreements.

185.    Defendants intend to cause a breach of those relationships Auto Driveaway has or had with its customers.

186.    There is no justification for Defendants' blatant disregard and interference with Plaintiff Auto Driveaway's business expectancies with its customers.

187.    Defendants' intentional interference with Auto Driveaway's business expectancies with its customers has resulted in damages to Auto Driveaway.

WHEREFORE, Auto Driveaway respectfully requests a judgment in favor of Auto Driveaway and against Defendant Corbett, InnovAuto, and AD Richmond as follows:

a)   An injunction requiring Defendants to make full disclosure of all uses made of the Auto Driveaway Marks in association with Defendant InnovAuto or the INNOVAUTO marks;

b)   An injunction requiring the removal of the YouTube video and any other uses of the

INNOVAUTO in association with the Auto Driveaway Marks;

c) Impounding of all infringing materials made or used in violation of the Franchise Agreements;

d) An injunction barring Defendants from directly or indirectly misusing the Auto Driveaway Marks in communications with Auto Driveaway customers;

e) An injunction barring Defendants from continued interference with Auto Driveaway customer relationships;

f) A joint and several award of compensatory damages, treble damages, Defendants' profits, interest, Auto Driveaway's costs and reasonable attorneys' fees; and

g) All such other relief the Court deems just and appropriate.

## COUNT VIII
## Declaratory Judgment That Auto Driveaway Owns Technology
## (All Defendants)

188.    Plaintiff Auto Driveaway incorporates the prior paragraphs 1-187 as if fully set forth here.

189.    Pursuant to paragraph 12.5 of the Franchise Agreements, Defendants AD Richmond and Corbett agreed as follows:

> You shall disclose to us prior to executing this Agreement all copyrighted or other pre-existing materials to which you claim ownership or any other rights.  You shall fully and promptly disclose to us all ideas, concepts, methods, and techniques relating to the development and/or operation of the Franchise conceived or developed by you and/or your Affiliates or employees during the term of this Agreement.  All such materials created or conceived by you or in collaboration with others during the term of this Agreement shall be [Auto Driveaway's] sole and exclusive property without further consideration to you.  You agree to execute any documentation necessary to perfect our ownership rights, including, without limitation, copyright, trademark, and patent applications, assignments, and/or recordings as we may request.

(Exhs. A, B, and C at ¶ 12.5.)

190.    Defendants AD Richmond and Corbett have breached and continue to breach this provision by attempting to keep, market, and sell the Unauthorized App.  Defendants AD Richmond and Corbett knowingly commissioned the very same developer who was working on the AD Driver 360 mobile application to create the Unauthorized App for Defendant InnovAuto during the terms of the Franchise Agreements.  In those Agreements, Defendants AD Richmond and Corbett agreed that the Unauthorized App is the sole and exclusive property of Auto Driveaway.

191.    Indeed, Defendants AD Richmond and Corbett retained the developer for the Unauthorized App for InnovAuto while they were assisting Auto Driveaway with updating the AD Driver 360 mobile application.  Defendants retained the same company and the same employee developer, to create the Unauthorized App.

192.    As a direct result of Defendants' conduct, Auto Driveaway will be irreparably damaged if Defendants are allowed to use, market, and sell the Unauthorized App.

193.    Plaintiff Auto Driveaway has performed all of its obligations under the Franchise Agreements.

194.    Defendants' conduct has caused, and will continue to cause, damages to Auto Driveaway.

195.    Plaintiff Auto Driveaway's interest in the Unauthorized App, created based upon Auto Driveaway proprietary software and know-how is far greater than Defendants Corbett or AD Richmond's alleged interest; and Defendant InnovAuto is merely an alter-ego for Defendant Corbett and has no rights in the Unauthorized App.

WHEREFORE, Auto Driveaway respectfully requests a judgment in favor of Auto

Driveaway and against Defendant Corbett, InnovAuto, and AD Richmond as follows:

a) An order declaring that Auto Driveaway owns all right, title, and interest in and to the Unauthorized App, any related technology, materials, source code, notes, and any other materials or concepts conceived or created during the term of the Franchise Agreements;

b) An order requiring Defendants to deliver to Auto Driveaway within 3 days of the order, the Unauthorized App and any related technology, materials, source code, notes, and any other materials or concepts conceived or created during the term of the Franchise Agreements;

c) An injunction requiring Defendants to make full disclosure of all uses made of the Auto Driveaway Marks in association with Defendant InnovAuto or the INNOVAUTO marks;

d) An injunction requiring the removal of the YouTube video and any other uses of the INNOVAUTO in association with the Auto Driveaway Marks;

e) Impounding of all infringing materials made or used in violation of the Franchise Agreements;

f) An injunction barring Defendants from directly or indirectly misusing the Auto Driveaway Marks;

g) A joint and several award of compensatory damages, treble damages, Defendants' profits, interest, Auto Driveaway's costs and reasonable attorneys' fees; and

h) All such other relief the Court deems just and appropriate.

Dated: July 20, 2018         GREENSFELDER, HEMKER, & GALE, P.C.

By: /s/ Ricardo Meza
Kara Cenar, ND Ill. No. 6198864
kcenar@greensfelder.com
Ricardo Meza, N.D. Ill. No. 6202784
rmeza@greensfelder.com
Susan Meyer, ND. Ill. No. 6226450
smeyer@greensfelder.com
Dawn Johnson, ND Ill. No. 6216582
dmj@greensfelder.com
David Simmons, ND Ill. No. 6279420
ds@greensfelder.com
200 West Madison Street
Suite 3300
Chicago, IL 60606
Telephone: 312-419-9090
Fax: 312-419-1930

*Attorneys for Plaintiff Auto Driveaway Franchise, LLC*

1743724.10
12451.881002