## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| AUTO DRIVEAWAY FRANCHISE SYSTEMS, LLC | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:18-cv-04971 |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY CORBETT, AUTO DRIVEAWAY RICHMOND, LLC, and INNOVAUTO USA, LLC | ) ) ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS', JEFFREY CORBETT'S, AUTO DRIVEAWAY RICHMOND, LLC'S AND INNOVAUTO USA, LLC'S, ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendants, Jeffrey Corbett, Auto Driveaway Richmond, LLC and InnovAuto USA, LLC (hereinafter "Defendants"), through their attorneys, O'Hagan Meyer, LLC, and for their Answer to Plaintiff's, Auto Driveaway Franchise Systems, LLC's, Complaint, states as follows:

### PRELIMINARY STATEMENT

1. Plaintiff Auto Driveaway is a franchisor that operates throughout the United States and offers, among other things, private and commercial vehicle transportation, fleet shipping and management, vehicle inspections, and truck transportation. Defendant AD Richmond is a multi-unit franchisee of Plaintiff Auto Driveaway and Defendant Corbett is a Guarantor of the AD Richmond Franchises. As such, Defendants Corbett and AD Richmond are entrusted with confidential and proprietary information of Auto Driveaway. This includes Auto Driveaway's technology, software, and systems that Defendants use to operate the Franchises. During the past four months (March to July 2018), Defendants Corbett and AD Richmond secretly engaged Plaintiff Auto Driveaway's software developer to design an unauthorized and

revised version of Plaintiff Auto Driveaway's proprietary software and mobile application ("**Unauthorized App**") so that the Unauthorized App could perform many of the same functions as Plaintiff Auto Driveaway's technology. Importantly, the Unauthorized App integrates elements of Auto Driveaway's proprietary software. Moreover, despite contractual obligations to disclose and turnover to the franchisor any improvements related to the franchise operations, Defendant Corbett instead formed a new entity, namely Defendant InnovAuto, created a brand, bought a domain name, and made extensive plans to exploit the Unauthorized App technology for his sole benefit.

> **ANSWER:** **Defendants admit only that the allegations within Paragraph 1 of the Complaint set forth Plaintiff's statement of the case but deny the accuracy thereof as to Plaintiff's business operations, Defendants' conduct and the operation of the InnovAuto software. Defendants further deny any liability to Plaintiff whatsoever.**

2.     Plaintiff Auto Driveaway was unaware of any of Defendants' covert activities until several weeks ago (early July 2018), and even then, Defendants refused to tell Plaintiff Auto Driveaway what they were doing. Plaintiff Auto Driveaway has now discovered that Defendant Corbett has been covertly peddling the unapproved Unauthorized App to Auto Driveaway customers for months. Defendants further created marketing materials wherein the Unauthorized App is branded under the mark INNOVAUTO and appears in connection with Auto Driveaway trademarks. This improper use of the Auto Driveaway trademarks is likely to create confusion in the marketplace as to the source of the products and services offered by an Auto Driveaway franchisee. Plaintiff Auto Driveaway has also discovered that Corbett used his position at AD Richmond and his access to the Auto Driveaway network to pitch a multi-phase proposal to one of Auto Driveaway's largest customers for a contract including Auto Driveaway's technology and the Unauthorized App branded under Defendant InnovAuto's mark.

Phase 1 of Defendants' proposal is valued at more than $500,000. This proposal was made last week - the day before Auto Driveaway released its own updated proprietary mobile application.

> **ANSWER:** **Defendants deny the allegations of Paragraph 2 of Plaintiff's Complaint in their entirety.**

3.      Therefore, Plaintiff Auto Driveaway seeks injunctive relief to stop Defendants' unauthorized use of its technology, to protect its trademarks, its system, and its customer relationships, and further seeks damages for actions that Defendants have already taken.

> **ANSWER:** **Defendants admit only that Plaintiff seeks injunctive relief but deny that such relief is appropriate and further deny any liability to Plaintiff whatsoever.**

## THE PARTIES

4.      Plaintiff Auto Driveaway is and was at all relevant times a Michigan limited liability company with its principal place of business in Lombard, Illinois. Auto Driveaway is a franchisor of Auto Driveaway franchises across the United States, including franchises in Virginia, Tennessee, and Ohio.

> **ANSWER:** **Upon information and belief, Defendants admit the allegations of Paragraph 4 of Plaintiff's Complaint.**

5.      Defendant Corbett is, and at all relevant times was a citizen of Virginia. Corbett is the sole member of Defendant AD Richmond. Corbett is the guarantor of AD Richmond's franchise obligations. Corbett is the sole member of Defendant InnovAuto.

> **ANSWER:** **Defendants admit the allegations of Paragraph 5 of Plaintiff's Complaint.**

6.      Defendant AD Richmond is and was at all relevant times a Virginia limited liability company with its principal place of business in Richmond, Virginia. AD Richmond is a franchisee of Auto Driveaway.

> **ANSWER:** **Defendants admit the allegations of Paragraph 6 of Plaintiff's**

**Complaint.**

7.     Defendant InnovAuto is and was at all relevant times a Virginia limited liability company with its principal place of business in Richmond, Virginia.

**ANSWER:**     **Defendants admit only that InnovAuto USA, LLC is a Virginia limited liability company but deny that InnovAuto has engaged in any business operations and therefore deny the remaining allegations of Paragraph 7 of Plaintiff's Complaint.**

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); 15 U.S.C. § 1114, *et. seq.* (the Lanham Act), and 28 U.S.C. § 1332 (diversity).  Further, this Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

**ANSWER:**     **In accordance with Defendants' motion to dismiss pursuant to Rule 12(b)(1), Defendants deny the allegations of Paragraph 8 of Plaintiff's Complaint.**

9.     In the relevant Franchise Agreements, the parties agreed that any state or federal court located in Cook County, Illinois has exclusive jurisdiction regarding any enforcement of, or dispute concerning, the Franchise Agreements.

**ANSWER:**     **Defendants admit only that the Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 9 of Plaintiff's Complaint.**

10.     Venue in this District is proper because Defendants targeted customers in Illinois, Corbett came to Illinois to attend meetings with Auto Driveaway, and because the terms of the parties' Franchise Agreements so provide.

**ANSWER:**     **Defendants deny that they targeted any customers in Illinois. Defendants admit only that, on occasion, Defendant Corbett traveled to Auto Driveaway's corporate offices in Illinois to meet with Auto**

4

> Driveaway officers and executives. Defendants further admit that the Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 10 of Plaintiff's Complaint.

## FACTS

**A.** **Auto Driveaway Creates a Market, Expands, and Innovates**

11.     Founded in 1952, Plaintiff Auto Driveaway was the first vehicle transport company in the United States. It is now the largest in North America. For more than sixty five years, Auto Driveaway has enjoyed a strong reputation for providing quality professional service in ever expanding areas. It is constantly adding new services and improving its offerings to meet the evolving needs of its customers.

> **ANSWER:** **Defendants admit only that Auto Driveaway was founded in 1952 and is the largest vehicle transport company in the United States. Defendants deny the remaining allegations of Paragraph 11 of Plaintiff's Complaint as phrased as to "ever expanding areas" and the "constant" addition of new services and improvements to meet customer needs.**

12.     Today, Auto Driveaway has 40 offices across the United States providing private and commercial vehicle transportation, fleet shipping, fleet management, truck transportation, vehicle condition reporting, government vehicle shipping services, vehicle storage, title and registration services, inspections, maintenance, and reconditioning. Auto Driveaway's vehicle transportation methods include door-to-door delivery, insurance protection, and an optional expedited service which guarantees pick-up within 48 hours.

> **ANSWER:** **Defendants admit only that Auto Driveaway has 40 locations across the United States operating as for-hire motor carriers specializing in the secondary movement of vehicles with door-to-door delivery, insurance protection and an optional expedited service. Defendants deny the remaining allegations of Paragraph 12 of Plaintiff's Complaint.**

13.     Plaintiff Auto Driveaway is also in the business of franchising its transportation offices and providing services from company-owned locations across the country under the trade name "Auto Driveaway" (the "**Trade Name**").

**ANSWER:     Defendants admit the allegations of Paragraph 13 of Plaintiff's Complaint.**

14.     Plaintiff Auto Driveaway owns numerous trademarks and service marks associated with its franchised and company owned operations. These include the word mark AUTO DRIVEAWAY, which is registered in the United States Patent and Trademark Office ("**USPTO**") under Registration No. 0946023 for "supplying drivers to drive automobiles from location to location;" AD Design (Reg. No. 3160871) for "vehicle delivery services;" and the pending applications for AUTO DRIVEAWAY and Design (Ser. No. 87006454) for:

"Business advisory services in the field of vehicle delivery and relocation services, truck delivery and relocation services, vehicle storage, vehicle registration and title transfer services, vehicle detailing services; Business assistance, advisory and consulting services in the field of vehicle delivery and relocation services, truck delivery and relocation services, vehicle storage, vehicle registration and title transfer services, vehicle detailing services; Business consulting, management, and planning services in the field of vehicle delivery and relocation services, truck delivery and relocation services, vehicle storage, vehicle registration and title transfer services, vehicle detailing services; Business management services, namely, administration of business engaged in vehicle delivery and relocation services, truck delivery and relocation services, vehicle storage, vehicle registration and title transfer services, vehicle detailing services; Business management in the field of vehicle delivery and relocation services, truck delivery and relocation services, vehicle storage, vehicle registration and title transfer services, vehicle detailing services; Business management advisory services relating to franchising; Franchising, namely, consultation and assistance in business management, organization and promotion; Franchising, namely, offering business management assistance in the establishment and/or operation of vehicle delivery and relocation services, truck delivery and relocation services, vehicle storage, vehicle registration and title transfer services, vehicle detailing services; Monitoring services for business purposes to ascertain the geographic locations of movable objects, namely, motor vehicles and individuals; Offering business management assistance in the establishment and/or operation of vehicle delivery and relocation services, truck delivery and relocation services, vehicle storage, vehicle registration and title transfer services, vehicle detailing services; Providing public sector contract vehicle management; Providing tracking services and information

concerning tracking of assets in transit, namely, vehicles, trailers, drivers, cargo and delivery containers for business inventory purposes; Services rendered by a franchisor, namely, assistance in the running or management of industrial or commercial enterprises; State vehicular registration and title transfer;

AUTO DRIVEAWAY and Design (Ser. No. 87006463) for "Automobile cleaning and car washing; Automobile lubrication; Automobile body repair and finishing for others; Automotive maintenance and repair; Automotive oil change services; Mechanic services; Repair or maintenance of two-wheeled motor vehicles; Tire rotating and balancing; Vehicle cleaning; Vehicle detailing; Vehicle washing; Automobile repair and maintenance; Vehicle maintenance and repair" and

AUTO DRIVEAWAY and Design (Ser. No. 87006470) for "car transport; Freight transportation by truck; Freight and transport brokerage; Freight train transport; Freighting services; Physical relocation services for trucks and trailers belonging to others; Physical storage of motor vehicles; Providing customized driving directions; Providing information concerning collection and delivery of assets in transit, namely, vehicles, trailers, drivers, cargo and delivery containers; Transport by man-powered vehicles; Truck hauling; Truck transport; Trucking services, namely, hauling of automobiles and trucks; Vehicle-driving services; Hired car transport; Motor vehicle sharing services, namely, providing temporary use of motor vehicles."

**ANSWER:** **The registrations and pending applications before the United States Patent and Trademark Office are public records which speak for themselves. To the extent that they are inconsistent with the registrations and pending applications, Defendants deny the allegations of Paragraph 14 of Plaintiff's Complaint.**

15.     Plaintiff Auto Driveaway also owns certain other trademarks and service marks used in association with its businesses which are protected by common law (registered, pending, and common law marks collectively, the "**Auto Driveaway Marks**.") Auto Driveaway has used the Auto Driveaway Marks consistently and pervasively, adding more modern designs through the years (additional Marks are shown in the table below). True and correct copies of Auto Driveaway's registration certificates are attached to this Verified Complaint at Exhibit A.

**ANSWER:** **The registration certificates attached as Exhibit A to Plaintiff's Complaint are documents which speak for themselves. To the extent they are inconsistent with the registrations certificates, Defendants deny the allegations of Paragraph 15 of Plaintiff's Complaint. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 15 of**

**Plaintiff's Complaint and therefore deny the same.**

16.     Plaintiff Auto Driveaway has built a unique reputation and public recognition for the quality products and services that it provides under the Auto Driveaway Trade Name and Auto Driveaway Marks. It has developed unique methods and techniques for establishing and operating Auto Driveaway offices. These methods and operations are offered to franchisees pursuant to their Franchise Agreements and related operations manuals ("**Auto Driveaway System**").

>    **ANSWER:**     **Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations as to the unique nature of Auto Driveaway's reputation and methods and techniques for establishing and operating its franchises and therefore deny the same.**

17.     The Auto Driveaway Trade Name, Marks, and System are strongly and highly distinctive. Plaintiff Auto Driveaway has expended substantial time, money, and effort to develop the Auto Driveaway concept and has acquired substantial goodwill in the industry.

>    **ANSWER:**     **Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 17 of Plaintiff's Complaint and therefore deny the same.**

>    **B.     Defendant Corbett's AD Richmond Is An Auto Driveaway Franchisee**

18.     Defendant Corbett has been working for or has owned an Auto Driveaway franchise for over 20 years. Corbett began working for his stepfather's Auto Driveaway franchise in the 1990s and later bought that business.

>    **ANSWER:**     **Defendants admit the allegations of Paragraph 18 of Plaintiff's Complaint.**

19.     In 2011, Defendant Corbett formed his company, AD Richmond, to purchase his stepfather's Richmond, VA Auto Driveaway franchise. A true and accurate copy of the Franchise Agreement between Auto Driveaway and AD Richmond for the Virginia franchise is

attached as <u>Exhibit B</u>.

> **ANSWER:** **Defendants admit that Corbett purchased the Richmond, VA franchise through AD Richmond in 2011 and that the Franchise Agreement contained at Exhibit B to Plaintiff's Complaint is a written document which speaks for itself.**

20.     In 2011, Corbett's company, AD Richmond, also purchased an Auto Driveaway franchise in Nashville, TN. A true and accurate copy of the Franchise Agreement between Auto Driveaway and AD Richmond for the Tennessee franchise is attached as <u>Exhibit C</u>.

> **ANSWER:** **Defendants admit that Corbett purchased the Nashville, TN franchise through AD Richmond in 2011 and that the Franchise Agreement contained at Exhibit C to Plaintiff's Complaint is a written document which speaks for itself.**

21.     In 2013, Corbett's company, AD Richmond, purchased an Auto Driveaway franchise in Cleveland, OH. A true and accurate copy of the Franchise Agreement between Auto Driveaway and AD Richmond for the Ohio franchise is attached as <u>Exhibit D</u>.

> **ANSWER:** **Defendants admit that Corbett purchased the Cleveland, OH franchise through AD Richmond in 2013 and that the Franchise Agreement contained at Exhibit D to Plaintiff's Complaint is a written document which speaks for itself.**

22.     Through the Franchise Agreements, Plaintiff Auto Driveaway provided AD Richmond a limited license to use the Auto Driveaway System for opening and operating an Auto Driveaway office. In addition, Auto Driveaway granted Defendant AD Richmond permission to use the Auto Driveaway System, Marks, Trade Name, and access to confidential information to operate a franchised office according to the terms of the Franchise Agreements.

> **ANSWER:** **Defendants admit that the Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 22 of Plaintiff's Complaint.**

> **C.** **Plaintiff's Proprietary Technology: AD Direct, AD360, and AD Driver 360**

23.     For over a decade, Auto Driveaway's primary operational software was a custom designed proprietary program known as AD Direct. This was the software that all offices used to manage moves and otherwise operate their businesses.

>   **ANSWER:** **Defendants admit that Plaintiff utilized a proprietary program known as AD Direct, based off of a model which was written by Corbett before being taken over and improperly implemented by Plaintiff.**

24.     Over the past several years, Auto Driveaway has spent vast sums to upgrade AD Direct to a re-branded and improved program known as AD360. Debuted in the summer of 2014, AD 360 has enhanced features and expansion capabilities.

>   **ANSWER:** **Defendants admit only that Plaintiff, through Corbett's efforts, developed an updated software program known as AD360 but deny the remaining allegations of Paragraph 24 of Plaintiff's Complaint.**

25.     Sometime later, after Auto Driveaway was using its AD360 software, Defendant Corbett introduced Auto Driveaway to a software development company/hosting service in Virginia. In 2015, Auto Driveaway engaged this software development company/hosting service in a limited capacity.

>   **ANSWER:** **Defendants admit only that Plaintiff, through Corbett's efforts, developed an updated software program known as AD360 and that Corbett introduced Auto Driveaway to a third-party software development company to again work on updating the software due to its improper implementation by Plaintiff.**

26.     In the summer of 2015, Auto Driveaway expanded its engagement with the software development company. That company assigned a particular developer to create a mobile application for Auto Driveaway's AD360 program. This mobile application is what became AD Driver 360.

>   **ANSWER:** **Defendants admit only that Plaintiff, through Corbett's efforts, developed an updated software program known as AD360 and again through Corbett's efforts, developed a mobile application, but lack**

**knowledge and information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 26 of Plaintiff's Complaint and therefore deny the same.**

27.     Over the course of that year (2015) and since that time, the software development company began providing hosting services and that same particular developer provided development services on a regular basis to Auto Driveaway. Specifically, they provided updates and fixes to the AD360 program while also developing the AD Driver 360 mobile application.

**ANSWER:     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 27 of Plaintiff's Complaint and therefore deny the same.**

28.     Defendant Corbett has been actively involved in the development of new technology and services for Auto Driveaway. Over the years, he worked closely with Auto Driveaway to expand its offerings. In one case, Defendant Corbett requested a revised customer module and Auto Driveaway paid its developer to create one.

**ANSWER:     Defendants admit that Corbett has been actively involved in the development of new software and services for Plaintiff, often at his own expense, and that he has worked with Auto Driveaway to expand software and services for the franchises, including the development of a revised customer software module.**

**D.     <u>Auto Driveaway Is Sold And Enjoys Rapid Growth</u>**

29.     In December, 2014 Auto Driveaway was purchased by a group of private investors. The new owners fostered Auto Driveaway's growth initiatives and promptly invested in updating technology and service offerings.

**ANSWER:     Defendants admit only that Auto Driveaway was purchased by a group of private investors in December of 2014 but deny the remaining allegations of Paragraph 29 of Plaintiff's Complaint.**

30.     During the past five years, Auto Driveaway purchased 11 franchised locations from prior franchisee owners and converted them to company-owned offices. The Auto

Driveaway system has enjoyed rapid growth in sales during this time.

>    **ANSWER:**    **Defendants admit only that Auto Driveaway has purchased 11 franchised locations from prior franchisee owners and converted them to company-owned offices but deny the remaining allegations of Paragraph 30 of Plaintiff's Complaint.**

31.    Defendant Corbett's franchisee company, AD Richmond, currently has the highest sales of any franchisee in the Auto Driveaway system. Corbett has expressed interest in buying additional Auto Driveaway franchise locations.

>    **ANSWER:**    **Defendants admit the allegations of Paragraph 31 of Plaintiff's Complaint.**

>    **E.**    **Corbett Pitches His Competing Venture to Auto Driveaway Customers**

32.    Frustrated at not being able to purchase additional franchise locations, at some point during the past year (2018), Corbett stopped cooperating with Auto Driveaway and surreptitiously began creating his own competing venture.

>    **ANSWER:**    **Defendants deny the allegations of Paragraph 32 of Plaintiff's Complaint.**

33.    In October 2017, unbeknownst to Plaintiff Auto Driveaway, Defendant Corbett purchased the domain, www.innovauto.com.  (Exhibit E.)

>    **ANSWER:**    **Defendants admit only that Corbett purchased the domain for www.innovauto.com in or around October 2017 but deny the remaining allegations of Paragraph 33 of Plaintiff's Complaint as phrased.**

34.    In November 2017, believing that Defendant AD Richmond was substantially in compliance with its Franchise Agreements, which were set to expire on January 31, 2018, Auto Driveaway offered AD Richmond renewals of its three Franchise Agreements.  (Exhibit F.)

>    **ANSWER:**    **Defendants admit only that the original franchise terms had been extended by agreement between April 6, 2016 and January 31, 2018 and that the parties began to discuss renewal agreements to further extend the franchise terms in or around November of 2017. Defendants lack knowledge and information sufficient to form a belief**

**as to the truth of the remaining allegations of Paragraph 34 and therefore deny the same.**

35. Later in November 2017, Defendant Corbett asked for an in-person meeting with Rodney Ruth, President and CEO of Auto Driveaway, to discuss various matters. Mr. Ruth met with Defendant Corbett in AD Richmond's offices on or about November 27, 2017. During that meeting, Corbett informed Mr. Ruth that he had a plan for a new customer, but could not disclose the details because he had signed a non-disclosure agreement with the customer. Also during that meeting, Defendant Corbett expressed frustration with the franchise system.

    **ANSWER:**    **Defendants admit only that in or around late November of 2017, Corbett met with Rodney Ruth, Plaintiff's President and Chief Executive Officer, at AD Richmond's offices to discuss the franchise renewals, various issues related to Plaintiff's franchises and business operations, and potential new business opportunities. Defendants deny the remaining allegations of Paragraph 35 of Plaintiff's Complaint.**

36. The Franchise Agreements grant a non-exclusive license to operate a business under the Auto Driveaway Marks. In addition, all goodwill from those operations inures to the franchisor's benefit. (Exhs. B, C, and D at ¶ 6.1.) Further, the Franchise Agreements provide that the Franchisor is a third party beneficiary to non-disclosure agreements entered into by the franchisee. (Exhs. B, C, and D at Exhibit G.)

    **ANSWER:**    **Defendants admit that the Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 36 of Plaintiff's Complaint.**

37. The Franchise Agreements also require Franchisees to disclose any new technology to the Franchisor. (Exhs. B, C, and D at ¶ 12.5.)

    **ANSWER:**    **Defendants deny any obligation under the Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint to disclose "any new technology" and therefore deny the allegations of**

13

**Paragraph 37 of Plaintiff's Complaint.**

38.     There is no legitimate reason for Defendant Corbett to withhold business information from the Franchisor.

> **ANSWER:**     **Defendants deny the allegations of Paragraph 38 of Plaintiff's Complaint.**

39.     On or about December 8, 2017, Mr. Ruth spoke on the telephone with Defendant Corbett. Corbett said that he was pitching Amazon for truck services and that the projects were starting in January 2018.  Mr. Ruth understood that this was for the benefit of Auto Driveaway.

> **ANSWER:**     **Defendants admit only that Corbett was coordinating with Amazon, a highly lucrative new customer, in order to offer truck relocation services through Auto Driveaway and that Corbett discussed this opportunity with Ruth on or around December 8, 2017. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 39 of Plaintiff's Complaint as to Ruth's understanding of that conversation and therefore deny the same.**

40.     During that December 8, 2017 telephone call, Mr. Ruth, still believing that the project was for the benefit of the Auto Driveaway system, offered to provide any support necessary, including purchasing vehicles and trailers for multiple locations.

> **ANSWER:**     **Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 40 of Plaintiff's Complaint as to Ruth's personal beliefs and therefore deny the same. Defendants deny the remaining allegations of Paragraph 40 of Plaintiff's Complaint.**

41.     Later that month, on or about December 27, 2017, unbeknownst to Plaintiff Auto Driveaway, Defendant Corbett formed a new limited liability company in Virginia, Defendant InnovAuto.

> **ANSWER:**     **Defendants admit only that Corbett formed and registered InnovAuto USA, LLC as a Virginia limited liability company in or around December of 2017. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations**

**of Paragraph 41 of Plaintiff's Complaint and therefore deny the same.**

42.     In January 2018, Mr. Ruth, unaware of the formation of Defendant InnovAuto,

followed up to offer assistance to Corbett.  Corbett, however, did not respond.

> **ANSWER:**     **Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 42 of Plaintiff's Complaint and therefore deny the same.**

43.     On January 31, 2018, Corbett did not execute his renewal Franchise Agreements;

instead, he further executed his covert plan to exploit the Unauthorized App for his own benefit.

> **ANSWER:**     **Defendants admit only that Corbett did not execute the renewal agreements for his franchises on January 31, 2018, and instead, the parties had been operating a month-to-month renewal until Plaintiff's termination notice. Defendants deny the remaining allegations of Paragraph 43 of Plaintiff's Complaint.**

44.     On or about March 15, 2018, Defendants Corbett, AD Richmond, or those acting

in concert with them, hired Auto Driveaway's software development company – and the very

same developer who was working on the AD Driver 360 mobile application. The parties

operated under a Statement of Work ("SOW").  The SOW was to develop the Unauthorized App.

(Exhibit G.)

> **ANSWER:**     **Defendants admit only that Corbett retained the same Virginia-based software development company that he had referred to Plaintiff and had been working with since 2017 in order to enter into a Statement of Work to develop software to evaluate vehicles for depreciation. The Statement of Work is a written document which speaks for itself. To the extent that they are inconsistent with the Statement of Work, and further to the extent that InnovAuto is not a mobile application and Defendants dispute its classification as an "Unauthorized App," Defendants deny the remaining allegations of Paragraph 44 of Plaintiff's Complaint.**

45.     Essentially, the Unauthorized App was being designed to inspect vehicles via a

mobile device in the field and produce condition reports.  This is the same concept that Auto

Driveaway hired the developer to create as AD Driver 360. Auto Driveaway's version is a

mobile application that connects to the existing AD360 technology.

> **ANSWER:** **Defendants deny that the InnovAuto software operates as a mobile application and dispute its classification as an "Unauthorized App," further deny that it is similar in any way to the AD Driver 360 mobile application or technology and deny that the InnovAuto software is related in any way to Plaintiff's current operations, services or technology.**

46. By April 12, 2018, Defendants Corbett, AD Richmond, or those acting in concert with them, continued developing the Unauthorized App. The development summary was already on "Version 1.1.4 4/12/2018." This development summary included the following features: "Login Roles & Permissions; Field Reporting Requirements; Photo Handler; Assessment Reports and Services;" (Exhibit H.)

> **ANSWER:** **Defendants deny that the InnovAuto software operates as a mobile application and dispute its classification as an "Unauthorized App," further deny that it is similar in any way to the AD Driver 360 mobile application or technology and deny that the InnovAuto software is related in any way to Plaintiff's current operations, services or technology. Answering further, the document attached as Exhibit H to Plaintiff's Complaint is a written document which speaks for itself. To the extent that they are inconsistent with that document, Defendants deny the allegations of Paragraph 46 of Plaintiff's Complaint.**

47. Crucially, the "Statement of Purpose" includes the following language: "Utilize the ***AD Richmond – [Auto Driveaway Customer]*** Infrastructure to capture the bridging requirements." *(emphasis added).* It also states that "[e]xpectations are for the system to perform within a pre-existing environment while acting as a bridging technology between fleet management companies through licensing." (Exhibit H.)

> **ANSWER:** **The Statement of Purpose within the document attached as Exhibit H to Plaintiff's Complaint is a written document which speaks for itself. To the extent that they are inconsistent with that document, Defendants deny the allegations of Paragraph 47 of Plaintiff's Complaint.**

48. Plaintiff Auto Driveaway has been conducting vehicle inspections and generating

condition reports for years.

> **ANSWER:** **Defendants admit only that Plaintiff's business operations include inspecting vehicles for damage and preparing written reports of such damage when present. However, Defendants deny that Plaintiff, through its AD Driver 360 mobile application or otherwise, conducts vehicle inspections for the purpose of calculating depreciation or providing any other technology or services similar to the InnovAuto software.**

49. Plaintiff Auto Driveaway began developing its AD Driver 360 mobile application in 2015. A crucial feature of the AD Driver 360 mobile application is to enhance the ability for drivers to conduct vehicle inspections and generate condition reports in the field. (Exhibit I.)

> **ANSWER:** **Defendants admit only that Plaintiff's business operations include inspecting vehicles for damage and preparing written reports of such damage when present. However, Defendants deny that Plaintiff, through its AD Driver 360 mobile application or otherwise, conducts vehicle inspections for the purpose of calculating depreciation or providing any other technology or services similar to the InnovAuto software. Defendants deny the remaining allegations of Paragraph 49 of Plaintiff's Complaint.**

50. A comparison of the two mobile applications' features is striking. Both begin with log in roles and permissions; both contain a photo handler/capability; both have the ability for clients to create contracts in the application; both provide for a vehicle inspection/condition report; both collect general vehicle information; both contain a checklist for creating a damage report; both use a mobile device's camera to record damage; and both input this information into a damage report.

> **ANSWER:** **Defendants deny that the InnovAuto software is a mobile application and further deny the remaining allegations of Paragraph 50 of Plaintiff's Complaint.**

51. Defendants did not wait for the delivery of the Unauthorized App to prepare to sell it.

> **ANSWER:** **Defendants deny any attempts to sell the InnovAuto software, which is**

> **not a mobile application, dispute its classification as an "Unauthorized App," and deny the allegations of Paragraph 51 of Plaintiff's Complaint as phrased.**

52.     At some point, Defendants created an "Auto Driveaway Service Overview" sales brochure. This sales brochure features Auto Driveaway's Marks and a description of Auto Driveaway's history and service offerings. There is a section titled "Coming Soon" that states: "Soon to be releasing our proprietary InnovAuto software that scans the units and releases real-time valuations, considering cosmetic/mechanical damage, local vehicle market pricing, and repair costs." (Exhibit J.)

> **ANSWER:      Defendants deny that Exhibit J to Plaintiff's Complaint is a sales brochure and therefore deny the allegations of Paragraph 52 of Plaintiff's Complaint.**

53.     None of the Defendants submitted this sales brochure to Auto Driveaway for approval.

> **ANSWER:      Defendants deny that Exhibit J to Plaintiff's Complaint is a sales brochure and therefore deny the allegations of Paragraph 53 of Plaintiff's Complaint.**

54.     Plaintiff Auto Driveaway has never granted Defendants permission to use the mark INNOVAUTO in association with the Auto Driveaway Marks.

> **ANSWER:      Defendants deny any improper association between InnovAuto and Plaintiff's name and/or marks, deny that Plaintiff's permission is necessary to use the InnovAuto name and/or marks, and deny the allegations of Paragraph 54 of Plaintiff's Complaint as phrased.**

55.     On or about June 28, 2018, Defendants or those in concert with them posted a video commercial on YouTube. As of July 18, 2018, that video was available online at: https://www.youtube.com/watch?v=sgPYkql7nTg and titled: InnovAuto5. Screenshots of the YouTube video are attached hereto as (Exhibit K.)

> **ANSWER:   Defendants deny that Exhibit K to Plaintiff's Complaint was a "video**

**commercial," deny that the screenshots contained at Exhibit K are a complete and accurate representation of the disputed YouTube "video" and therefore deny the allegations of Paragraph 55 of Plaintiff's Complaint.**

56.     Defendants are falsely and improperly representing to the public that Auto Driveaway and Defendant InnovAuto are related.  (Exhibit K.)

> **ANSWER:     Defendants deny the allegations of Paragraph 56 of Plaintiff's Complaint.**

57.     The YouTube Video opens with a large AUTO DRIVEAWAY trademark and falsely offers services and products as being from Auto Driveaway and Defendant InnovAuto.

> **ANSWER:     Defendants deny the allegations of Paragraph 57 of Plaintiff's Complaint.**

58.     Plaintiff Auto Driveaway's logo contains a "pin drop" feature as can be seen on its website, https://autodriveaway.com/, and below:

[image omitted]

The unauthorized YouTube video created and uploaded by Defendants also uses these "pin drops" throughout the video.  (Exhibit K.)

> **ANSWER:     Defendants admit only that Plaintiff's logo contains an image of a "pin drop," but deny that pin drops are unique images used exclusively by or uniquely associated with Plaintiff. Defendants further deny that Exhibit K to Plaintiff's Complaint was a "video commercial" and therefore deny the remaining allegations of Paragraph 58 of Plaintiff's Complaint.**

59.     The YouTube Video specifically targets customers at locations where Auto Driveaway has offices, including Illinois.

> **ANSWER:     Defendants deny the allegations of Paragraph 59 of Plaintiff's Complaint.**

60.     The YouTube Video contains a screen showing a condition report with the Vehicle Identification Numbers of at least two actual vehicles that were moved by Auto

Driveaway.  (Exhibit K.)

> **ANSWER:** **Defendants deny that Exhibit K to Plaintiff's Complaint was a "video commercial" and further deny any remaining allegations of Paragraph 60 of Plaintiff's Complaint to the extent that they are inconsistent with the content of the incomplete screenshots taken from YouTube which speak for themselves.**

61.     The YouTube Video shows the marks INNOVAUTO and INNOVAUTO and Design in association with Plaintiff Auto Driveaway and Auto Driveaway's Marks.

> **ANSWER:** **Defendants deny that Exhibit K to Plaintiff's Complaint was a "video commercial," deny any improper association between InnovAuto and Plaintiff's name and/or marks, and further deny any remaining allegations of Paragraph 61 of Plaintiff's Complaint to the extent that they are inconsistent with the content of the incomplete screenshots taken from YouTube which speak for themselves.**

62.     The YouTube Video references "our INNOVAUTO site." Plaintiff Auto Driveaway has not authorized the affiliation of Auto Driveaway with any website associated with Defendant InnovAuto or any website that uses the mark INNOVAUTO.  (Exhibit K.)

> **ANSWER:** **Defendants deny that Exhibit K to Plaintiff's Complaint was a "video commercial," deny any improper or unauthorized association between InnovAuto and Plaintiff's name and/or marks, and further deny any remaining allegations of Paragraph 62 of Plaintiff's Complaint to the extent that they are inconsistent with the content of the incomplete screenshots taken from YouTube which speak for themselves.**

63.     Defendants Corbett and AD Richmond were involved in designing and planning the AD Driver 360 mobile application for Auto Driveaway. Their employees tested the AD Driver 360 mobile application during development and gave feedback to Auto Driveaway for the developer.

> **ANSWER:** **Defendants admit the allegations of Paragraph 63 of Plaintiff's Complaint.**

64.     July 11, 2018 was the scheduled launch date for the latest version of the AD Driver 360 mobile application.

> **ANSWER:** **Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 64 and therefore deny the same.**

65.     Defendant Corbett scheduled a meeting for July 10, 2018 with one of Auto Driveaway's largest customers at which he planned to pitch a multi-phase proposal for his new company with a Phase 1 value in excess of $500,000. That proposal is branded with Auto Driveaway Marks and prominently serves up the INNOVAUTO and Design mark as providing "Solutions" to the customer's "Challenges." Among the "solutions" proposed to be provided by Defendant InnovAuto are services currently offered by Auto Driveaway.  (Exhibit L.)

> **ANSWER:** **Defendants deny the allegations of Paragraph 65 of Plaintiff's Complaint.**

66.     Defendant Corbett failed to notify Auto Driveaway about this meeting or that he intended to co-brand Auto Driveaway services with Defendant InnovAuto.

> **ANSWER:** **Defendants deny the allegations of Paragraph 66 of Plaintiff's Complaint.**

67.     On July 11, 2018, Auto Driveaway launched the latest version of its AD Driver 360 mobile application. (Exhibit M.)

> **ANSWER:** **Defendants admit the allegations of Paragraph 67 of Plaintiff's Complaint.**

68.     The AD Driver 360 mobile application contains many of the same features that are described in the SOWs for the Unauthorized App.

> **ANSWER:** **Defendants dispute the classification of the InnovAuto software as an "Unauthorized App" and deny the allegations of Paragraph 68 of Plaintiff's Complaint.**

69.     The Unauthorized App and related technology were developed or are being developed during the term of Defendant AD Richmond's Franchise Agreements and the plain reading of those Agreements requires Defendants to "fully and promptly disclose to [Auto

Driveaway] all ideas, concepts, methods, and techniques relating to the development and/or operation of the Franchise conceived or developed by you and/or your Affiliates or employees during the term of this Agreement." Defendants have refused to disclose any information about the Unauthorized App to Auto Driveaway.

> **ANSWER:** **Defendants dispute the classification of the InnovAuto software as an "Unauthorized App," dispute the application of the Franchise Agreements to the InnovAuto software as it is not an "Improvement" pursuant to the terms of the Franchise Agreements and deny the allegations of Paragraph 69 of Plaintiff's Complaint in their entirety.**

70.     Defendant Corbett claims that he owns the Unauthorized App and related technology.

> **ANSWER:** **Defendants admit that Corbett developed, paid for and owns the rights to the InnovAuto concept and software, but dispute the classification of the software as an "Unauthorized App."**

71.     The Franchise Agreement clearly addresses ownership of Improvements. "All such materials created or conceived by you or in collaboration with others during the term of this Agreement shall be our sole and exclusive property without further consideration to you."

> **ANSWER:** **Defendants deny that the InnovAuto concept and software is an "Improvement" covered by the Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint. The Franchise Agreements are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 71 of Plaintiff's Complaint.**

72.     Plaintiff Auto Driveaway asserts that it owns the Unauthorized App.

> **ANSWER:** **Defendants admit that they assert ownership in the InnovAuto software and concept but dispute its classification as an "Unauthorized App."**

73.     There is an actual controversy between the parties.

> **ANSWER:** **Defendants admit the allegations of Paragraph 73 of Plaintiff's Complaint.**

### F. **AD Richmond and Corbett Are Violating The Franchise Agreements and Wrongfully Competing with Auto Driveaway**

74. Defendants Corbett as Guarantor, and AD Richmond are improperly competing with Auto Driveaway in breach of the Franchise Agreements.

> **ANSWER:** **Defendants deny the allegations of Paragraph 74 of Plaintiff's Complaint.**

75. Pursuant to the franchise relationship, Auto Driveaway issues email addresses for employees working at the franchisee locations with the "autodriveaway.com" address. It issued email addresses for employees at Defendant AD Richmond.

> **ANSWER:** **Defendants admit the allegations of Paragraph 75 of Plaintiff's Complaint.**

76. Defendants AD Richmond and Corbett are using their autodriveaway.com e-mail addresses to actively pursue a competing business on behalf of Corbett and Defendant InnovAuto. (Exhibit N.)

> **ANSWER:** **Defendants deny the allegations of Paragraph 76 of Plaintiff's Complaint.**

77. As recently as the week that this lawsuit was filed, Defendants Corbett and AD Richmond ordered business cards from Auto Driveaway for a new employee. This was in the ordinary course of business.

> **ANSWER:** **Defendants admit the allegations of Paragraph 77 of Plaintiff's Complaint.**

78. Plaintiff Auto Driveaway has since learned that this same Auto Driveaway Richmond employee was also issued an email address by Defendant AD Richmond at Defendant InnovAuto's domain.

> **ANSWER:** **Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 78 and therefore deny**

23

the same.

1)     Corbett and AD Richmond are Improperly Using the Licensed Marks and Auto Driveaway System.

79.     In the Franchise Agreements, Defendants Corbett and AD Richmond acknowledged that Auto Driveaway developed a system for establishing, operating, and promoting "for hire" motor carrier offices specializing in secondary movement of automobiles, vans, trucks, and other vehicles for individuals and corporations, which includes the use and license of certain valuable service marks such as AUTO DRIVEAWAY, AD Design, and AUTO DRIVEAWAY and Design. (Exhs. B, C, and D at p. 1.)

> **ANSWER:**     **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 79 of Plaintiff's Complaint.**

80.     Plaintiff Auto Driveaway granted, and Defendant AD Richmond accepted, the "non-exclusive right to operate a "for hire" motor carrier office utilizing the Auto Driveaway System and the Licensed Marks at the Franchised Office within the Franchise Territory." (Exhs. B, C, and D at ¶ 2.1.)

> **ANSWER:**     **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 80 of Plaintiff's Complaint.**

81.     Defendants AD Richmond and Corbett expressly acknowledged Auto Driveaway's rights in and to the Licensed Marks attached to the Franchise Agreements as Exhibit B, and agreed "not to represent in any manner that [Defendants AD Richmond and Corbett] have acquired any ownership rights in the Licensed Marks." (Exhs. B, C, and D at ¶ 6.1.) Defendants AD Richmond and Corbett further agreed that any and all goodwill associated

with the Auto Driveaway System and identified by the Licensed Marks is Auto Driveaway's property and shall inure directly and exclusively to Auto Driveaway's benefit. (Exhs. B, C, and D at ¶ 6.1.)

>    **ANSWER:** **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 81 of Plaintiff's Complaint.**

82.    Defendants AD Richmond and Corbett agreed that they would display and use only the Licensed Marks and Auto Driveaway System as required in the Franchise, that they would not use the Licensed Marks without Auto Driveaway's prior written consent, and that during the term of the Franchise Agreements and thereafter, they would not, directly or indirectly, infringe upon Auto Driveaway's rights with respect to the Licensed Marks. "You agree not to use any other marks except with our prior written consent." (Exhs. B, C, and D at ¶6.2.)

>    **ANSWER:** **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 82 of Plaintiff's Complaint.**

83.    Despite these promises, Defendants Corbett and AD Richmond are associating the INNOVAUTO mark with Auto Driveaway's Marks and their Franchises without Auto Driveaway's consent to promote the competing Defendant InnovAuto's business.

>    **ANSWER:** **Defendants deny the allegations of Paragraph 83 of Plaintiff's Complaint.**

84.    Defendants Corbett and AD Richmond are misusing Auto Driveaway's Marks by associating them with an unauthorized mark.

**ANSWER:** Defendants deny the allegations of Paragraph 84 of Plaintiff's Complaint.

        2)      <u>Corbett and AD Richmond Are Operating Outside of Their Territories.</u>

85.     AD Richmond's Franchise Territories, as described in the Franchise Agreements, are: (1) Richmond, Virginia and several Core Based Statistical Areas ("CBSA") in Virginia; (2) Nashville, Tennessee and several CBSA's in Tennessee; and (3) Cleveland, Ohio and 5 counties in Ohio. (Exhibit A to each of the Franchise Agreements attached hereto as Exhs. A, B, and C.)

**ANSWER:** The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 85 of Plaintiff's Complaint.

86.     Nevertheless, Defendants AD Richmond and Corbett have signed a lease for two buildings in Manteca, California, with the stated use being "general offices, warehouse/shop and yard *<u>for an automobile shipping company</u>*, which shall include storage of new/used (no in-operable vehicles)." A true and correct copy of the lease signed by Mr. Corbett on behalf of Defendant AD Richmond is attached as (<u>Exhibit O</u>.) Defendants AD Richmond and Corbett do not have authority to open an Auto Driveaway location in California, and the two leased buildings are within 50 miles of an already existing Auto Driveaway location.

**ANSWER:** Defendants deny that the lease in Manteca, California is for the opening or operation of an Auto Driveaway location or that Plaintiff's authority was necessary to execute the lease as the location will be used for re-marketing vehicles. The lease attached as Exhibit O to Plaintiff's Complaint is a written document which speaks for itself. To the extent that they are inconsistent with the lease, Defendants deny the allegations of Paragraph 86 of Plaintiff's Complaint.

87.     Defendants AD Richmond and Corbett are actively attempting to lease more locations to operate their competing businesses and to compete with Auto Driveaway. In

correspondence with a realtor, Defendant Corbett states, "… we are looking at leasing double digit locations across the US…."  (Exhibit P.)

> **ANSWER:** **Defendants deny the allegations of Paragraph 87 of Plaintiff's Complaint as the statements within Exhibit P to Plaintiff's Complaint refer to the potential development of an after-market automotive accessory business.**

> 3) Corbett and AD Richmond Are In Breach of the Standards of Operation for the Franchise Agreements.

88. Defendants Corbett and AD Richmond agreed to strictly conform to the Standards of Operation for their franchises. (Exhs. B, C, and D at ¶ 8.1.)

> **ANSWER:** **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 88 of Plaintiff's Complaint.**

89. Defendants Corbett and AD Richmond agreed that in all their dealings with Auto Driveaway, they would adhere to the "highest possible standards of professional conduct, honesty, integrity, ethical behavior, dependability, good faith, and fair dealing." (Exhs. B, C, and D at ¶ 8.10.)

> **ANSWER:** **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 89 of Plaintiff's Complaint.**

90. Instead, Defendants Corbett and AD Richmond engaged in a covert campaign to convert for Corbett and Defendant InnovAuto the benefits of Auto Driveaway's decades of goodwill associated with its Marks and System.

> **ANSWER:** **Defendants deny the allegations of Paragraph 90 of Plaintiff's Complaint.**

91. When Plaintiff Auto Driveaway asked Defendant Corbett about his plans, he

refused to comply with the specific terms of his Franchise Agreement. In derivation of his legal and ethical obligations, Defendant Corbett has used Auto Driveaway resources for the benefit of his competing business.

> **ANSWER:** **Defendants deny the allegations of Paragraph 91 of Plaintiff's Complaint.**

92.  Defendants Corbett and AD Richmond have been dishonest in their dealings with the franchisor in breach of the Franchise Agreements.

> **ANSWER:** **Defendants deny the allegations of Paragraph 92 of Plaintiff's Complaint.**

93.  By co-branding Defendant InnovAuto's trademarks with Auto Driveaway Marks, Defendants Corbett and AD Richmond have breached their obligations of good faith and fair dealing to the Franchisor and to the Auto Driveaway customers, exposing Auto Driveaway to loss of business, customers, and goodwill.

> **ANSWER:** **Defendants deny the allegations of Paragraph 93 of Plaintiff's Complaint.**

94.  Under the Franchise Agreements, Defendants Corbett and AD Richmond are prohibited from offering or selling any products or services not authorized by the Franchisor.

> **ANSWER:** **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 94 of Plaintiff's Complaint, and Defendants explicitly deny that the Franchise Agreements prohibit Corbett from engaging in the offer or sale of any other products or services which are not related to the Auto Driveaway System without the Plaintiff's authorization.**

95.  Auto Driveaway has not authorized the offering or selling of anything from Defendant InnovAuto.  Auto Driveaway has not authorized any use of the mark INNOVAUTO.

> **ANSWER:** **Defendants denies that InnovAuto's software and services have been offered for sale or sold and further denies that Plaintiff's**

**authorization is required to offer or sell InnovAuto's software and services. However, Defendant admits that Plaintiff has not authorized the use of the InnovAuto name and/or marks.**

4)  <u>Defendants Corbett and AD Richmond Are in Breach of the Confidentiality, Non-Disclosure, and Non-Competition Obligations of the Franchise Agreements.</u>

96.  Defendants Corbett and AD Richmond agreed not to disclose any Confidential Information provided to them during the course of the franchise relationship. They further agreed that they "shall not use the Confidential Information in any other business capacity; …." They also agreed that they "… shall not contest [Auto Driveaway's] right to exclusively use the Confidential Information." <u>(Exhs. B, C, and D at ¶ 12.1.)</u>

> **<u>ANSWER:</u>**  **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 96 of Plaintiff's Complaint. Defendants further deny that they have engaged in any use or disclosure of "Confidential Information" in violation of the Franchise Agreements.**

97.  The term "Confidential Information" includes among other things, "… ideas, proprietary software, research and development, know-how, business and marketing plans and proposals.…" <u>(Exhs. B, C, and D at ¶ 1.)</u>

> **<u>ANSWER:</u>**  **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 97 of Plaintiff's Complaint.**

98.  During the term of the Franchise Agreements, Defendants AD Richmond and Corbett agreed that they would not:

> (a) have any direct or indirect interest as a disclosed or beneficial owner in any Competitive Business;
> (b) perform services as a director, officer, manager, employee, consultant, representative, agent, or otherwise for a Competitive Business anywhere; or

(c) divert or attempt to divert any business related to the Franchise or the Auto Driveaway System directly or indirectly to a Competitive Business.

(Exhs. B, C, and D at ¶ 12.2.)

> **ANSWER:** **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 98 of Plaintiff's Complaint.**

99.     The term "Competitive Business" <u>"means operating</u> "for-hire" motor carrier businesses operating as either a common carrier or a contract carrier or <u>any business</u> which operates or grants franchises or licenses to others to operate a business <u>that provides similar services and/or products as those offered by us</u>. Competitive Business shall not include another Auto Driveaway Office operated by you." <u>(Exhs. B, C, and D at p. 2.)</u> *(emphasis added.)*

> **ANSWER:** **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 99 of Plaintiff's Complaint.**

100.     Upon the termination, assignment, or transfer of the Franchise Agreements for any reason, Defendants AD Richmond and Corbett agreed that they would not:

> [F]or a period of two (2) years after such termination, assignment, or transfer […] engage, directly or indirectly, as an owner, operator, or in any managerial capacity, in any Competitive Business, at or within a fifty (50) mile radius of the former Franchised Territory or any other Territory with an Auto Driveaway Office other than as an authorized franchise owner of another Auto Driveaway Office.

(Exhs. B, C, and D at ¶ 12.2.)

> **ANSWER:** **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 100 of Plaintiff's Complaint.**

101.    Defendants AD Richmond and Corbett agreed that the purpose of the covenant in paragraph 12.3 of the Franchise Agreements was not to deprive them of their livelihood and that enforcing the covenant would not deprive them of their livelihood.  (Exhs. B, C, and D at ¶ 12.2.)

> **ANSWER:** **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 101 of Plaintiff's Complaint.**

102.    Defendants AD Richmond and Corbett agreed that the purpose of the covenant in paragraph 12.3 of the Franchise Agreements is to protect the goodwill and interest of the Auto Driveaway System.  (Id.)

> **ANSWER:** **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 102 of Plaintiff's Complaint.**

103.    The obligations under Section 12 of the Franchise Agreements survive the termination or expiration of the Franchise Agreements, and Defendants AD Richmond and Corbett agreed that Auto Driveaway is entitled to seek injunctive relief against any actual or contemplated breach without posting a bond.  (Exhs. B, C, and D at ¶ 12.4.)  Defendants AD Richmond and Corbett further agreed that they would be liable for Auto Driveaway's costs and attorneys' fees incurred to enforce Section 12 of the Franchise Agreements.

> **ANSWER:** **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 103 of Plaintiff's Complaint. Defendants further deny any breach of the Franchise Agreements and that Plaintiff is entitled to any relief whatsoever, including injunctive relief, costs and attorneys' fees.**

104.    As late as July 2, 2018, Defendants AD Richmond and Corbett represented to

Auto Driveaway that the Franchise Agreements are in effect, are continuing on a month-to-month basis, and that they do not intend to compete against Auto Driveaway for two years after their Franchise Agreements expire.

> **ANSWER:** **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 104 of Plaintiff's Complaint. Defendants further deny any additional representations or agreements. The enforcement of the non-compete agreement constitutes a legal conclusion to which no response is required. To the extent an answer is deemed necessary, Defendants deny the remaining allegations of Paragraph 104 of Plaintiff's Complaint.**

105.    Defendants AD Richmond's and Corbett's actions, however, tell a different story, necessitating the filing of this action and the request for injunctive relief.

> **ANSWER:** **Defendants deny any breach of the Franchise Agreements and any other liability to Plaintiff whatsoever, and further deny that Plaintiff is entitled to any relief.**

> 5) <u>Corbett and AD Richmond Agreed To Disclose All New</u> Concepts to Auto Driveaway; Such Improvements Belong to Auto Driveaway.

106.    In paragraph 12.5 of the Franchise Agreements, Defendants AD Richmond and Corbett agreed as follows:

> You shall disclose to us prior to executing this Agreement all copyrighted or other pre-existing materials to which you claim ownership or any other rights. You shall fully and promptly disclose to us all ideas, concepts, methods, and techniques relating to the development and/or operation of the Franchise conceived or developed by you and/or your Affiliates or employees during the term of this Agreement. All such materials created or conceived by you or in collaboration with others during the term of this Agreement shall be [Auto Driveaway's] sole and exclusive property without further consideration to you. You agree to execute any documentation necessary to perfect our ownership rights, including, without limitation, copyright, trademark, and patent applications, assignments, and/or recordings as we may request.

(Exhs. A, B, and C [sic] at ¶ 12.5.)

> **ANSWER:** **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 106 of Plaintiff's Complaint.**

107. Defendants AD Richmond and Corbett have not disclosed the methods, techniques, or source code for the Unauthorized App to Auto Driveaway.

> **ANSWER:** **Defendants deny any obligation to disclose or otherwise turn over the methods, techniques or source code for the InnovAuto software to Plaintiff and further dispute its classification as an "Unauthorized App."**

108. Defendants AD Richmond and Corbett have refused to turnover any materials related to the Unauthorized App to Auto Driveaway.

> **ANSWER:** **Defendants deny any obligation to disclose or otherwise turn over the methods, techniques or source code for the InnovAuto software to Plaintiff and further dispute its classification as an "Unauthorized App," and therefore, deny the allegations of Paragraph 108 of Plaintiff's Complaint.**

109. Defendants AD Richmond and Corbett are in breach of their obligations to disclose new concepts to the franchisor.

> **ANSWER:** **Defendants deny the allegations of Paragraph 109 of Plaintiff's Complaint.**

> **G.** **Corbett is in Breach of the Guaranties.**

110. Defendant Corbett personally guaranteed to Auto Driveaway that he would "punctually pay and perform each and every undertaking, agreement and covenant set forth in the Franchise Agreements," and he agreed to be personally bound by, and personally liable for the breach of each and every provision in the Franchise Agreement. (Exhibit H attached to the Franchise Agreements, which are attached hereto as Exhs. A, B, and C [sic].)

> **ANSWER:** **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for**

> **themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 106 of Plaintiff's Complaint.**

111.    Defendant Corbett is responsible for the violations of AD Richmond.

> **ANSWER:**    **Defendants deny any "violations of AD Richmond" and therefore deny the allegations of Paragraph 111 of Plaintiff's Complaint.**

## COUNT I

### Trademark Infringement Lanham Act § 32 (Against All Defendants)

112.    Plaintiff Auto Driveaway incorporates the prior paragraphs 1-111 as if fully set forth here.

> **ANSWER:**    **Defendants restate and reallege their answers to Paragraphs 1 through 111 of Plaintiff's Complaint as though fully set forth herein as their response to Paragraph 112 of Plaintiff's Complaint.**

113.    Plaintiff Auto Driveaway owns the Marks described above in Paragraphs 14-15 and the substantial goodwill associated therewith.

> **ANSWER:**    **Defendants admit the allegations of Paragraph 113 of Plaintiff's Complaint.**

114.    Plaintiff Auto Driveaway's trademark registrations set forth in Exhibit A are prima facie evidence of their validity and provide constructive notice to others of Auto Driveaway's claim of ownership. 15 U.S.C. § 1115, *et seq.* Further, in the Franchise Agreements, Defendants had actual knowledge of Auto Driveaway's claims of ownership.

> **ANSWER:**    **Defendants admit to Plaintiff's ownership of and the validity of the Auto Driveaway Marks and Trade Name. The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. Answering further, 15 U.S.C. § 1115 is a statute which speaks for itself. To the extent that they are inconsistent with the Franchise Agreements and/or 15 U.S.C. § 1115, Defendants deny the allegations of Paragraph 114 of Plaintiff's Complaint.**

115.    Under the Franchise Agreements, Defendant AD Richmond is a mere licensee

with a right to use the Auto Driveaway's Marks and the associated goodwill, but only to the extent permitted by the Franchise Agreements. Defendant Corbett is a Guarantor of the Franchise Agreements.

> **ANSWER:** **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 115 of Plaintiff's Complaint.**

116.     Defendant AD Richmond's violations of the Franchise Agreement and failure to properly operate the business in compliance with the Auto Driveaway System, constitutes a misappropriation of Auto Driveaway's Marks and Trade Name. Defendant Corbett is a Guarantor of the Franchise Agreements.

> **ANSWER:** **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 116 of Plaintiff's Complaint. Defendants further deny any violations of the Franchise Agreements and any failure to operate the franchises pursuant to the "Auto Driveaway System." The remaining allegations of Paragraph 129 of Plaintiff's Complaint constitute a legal conclusion to which no response is required. To the extent an answer is deemed necessary, Defendants deny the remaining allegations of Paragraph 116 of Plaintiff's Complaint.**

117.     Defendants Corbett and AD Richmond are currently using the Auto Driveaway Marks in an unauthorized manner to promote Defendant InnovAuto.  See Exhibits. G, H, K, L. N. attached hereto.

> **ANSWER:** **Defendants deny the allegations of Paragraph 117 of Plaintiff's Complaint.**

118.     Defendant InnovAuto has no rights to use the Auto Driveaway Marks in any manner.

> **ANSWER:** **Defendants admit only that InnovAuto's right to use the Auto**

35

**Driveaway name and/or marks is regulated by the Lanham Act and common law, and deny the allegations of Paragraph 118 as phrased.**

119.    Defendant InnovAuto is using the Auto Driveaway Marks in a manner to create a false association between the companies as to the source of products and services.

**ANSWER:    Defendants deny the allegations of Paragraph 119 of Plaintiff's Complaint.**

120.    Defendants' improper use of the Auto Driveaway Marks causes immediate and irreparable harm to Auto Driveaway due to its loss of control over the quality of goods and services advertised, offered, and provided under its Marks. The loss of Auto Driveaway's right to control the use of the Marks and the reputation of the services and goods provided in connection therewith is real and substantial.

**ANSWER:    Defendants deny the allegations of Paragraph 120 of Plaintiff's Complaint.**

121.    Defendants' use of the Auto Driveaway Marks in association with Defendant InnovAuto's marks INNOVAUTO and INNOVAUTO and Design of Vehicle does deceive and cause confusion, and is likely to continue to cause confusion as to the source of the products and services offered by Defendants.

**ANSWER:    Defendants deny the allegations of Paragraph 121 of Plaintiff's Complaint.**

122.    Defendants' unauthorized and continued use of Auto Driveaway's Marks has benefitted Defendants and they have profited from their improper use.

**ANSWER:    Defendants deny the allegations of Paragraph 122 of Plaintiff's Complaint.**

123.    Plaintiff Auto Driveaway has incurred damages from Defendants' unauthorized use of the Auto Driveaway Marks.

**ANSWER:    Defendants deny the allegations of Paragraph 123 of Plaintiff's**

Complaint.

124.    Defendants are knowingly willfully infringing upon Auto Driveaway's Trade Name and Marks.

**ANSWER:    Defendants deny the allegations of Paragraph 124 of Plaintiff's Complaint.**

125.    Defendants' improper use of the Auto Driveaway Marks constitutes trademark and service mark infringement under the Lanham Act, 15 U.S.C. § 1114(1). Defendants' infringing conduct is willful infringement under 15 U.S.C. § 1114(1) and constitutes an exceptional case under 15 U.S.C. § 1117(a).

**ANSWER:    The allegations of Paragraph 125 of Plaintiff's Complaint constitute legal conclusions to which no response is required. To the extent an answer is deemed necessary, Defendants deny the allegations of Paragraph 125 of Plaintiff's Complaint.**

WHEREFORE, Defendants, Jeffrey Corbett, Auto Driveaway Richmond, LLC and InnovAuto USA, LLC, respectfully request that this Court enter judgment in their favor and against Plaintiff, Auto Driveaway Franchise Systems, LLC, with prejudice and with costs to Defendants, and provide for any further relief deemed necessary.

**COUNT II**
**Trademark Infringement Common Law**
**(All Defendants)**

126.    Plaintiff Auto Driveaway incorporates the prior paragraphs 1-125 as if fully set forth here.

**ANSWER:    Defendants restate and reallege their answers to Paragraphs 1 through 125 of Plaintiff's Complaint as though fully set forth herein as their response to Paragraph 126 of Plaintiff's Complaint.**

127.    Plaintiff Auto Driveaway owns the Marks described above in Paragraph 14-15 and the substantial goodwill associated therewith.

> **ANSWER:** **Defendants admit the allegations of Paragraph 127 of Plaintiff's Complaint.**

128.     Under the Franchise Agreements, Defendant AD Richmond is a mere licensee with a right to use the Auto Driveaway's Marks and the associated goodwill, but only to the extent permitted by the Franchise Agreements. Defendant Corbett is a Guarantor of the Franchise Agreements.

> **ANSWER:** **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 128 of Plaintiff's Complaint.**

129.     Defendant AD Richmond's violations of the Franchise Agreement and failure to properly operate the business in compliance with the Auto Driveaway System, constitutes a misappropriation of Auto Driveaway's Marks and Trade Name. Defendant Corbett is a Guarantor of the Franchise Agreements.

> **ANSWER:** **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 129 of Plaintiff's Complaint. Defendants further deny any violations of the operative franchise agreements and any failure to operate the franchises pursuant to the "Auto Driveaway System." The remaining allegations of Paragraph 129 of Plaintiff's Complaint constitute a legal conclusion to which no response is required. To the extent an answer is deemed necessary, Defendants deny the remaining allegations of Paragraph 129 of Plaintiff's Complaint.**

130.     Defendants Corbett and AD Richmond are currently using the Auto Driveaway Marks in an unauthorized manner to promote Defendant InnovAuto.     Exhs. G, H, K, L. N. attached hereto.

> **ANSWER:** **Defendants deny the allegations of Paragraph 130 of Plaintiff's Complaint.**

131.    Defendant InnovAuto has no rights to use the Auto Driveaway Marks in any manner.

> **ANSWER:**    **Defendants admit only that InnovAuto's right to use the Auto Driveaway name and/or marks is regulated by the Lanham Act and common law, and deny the allegations of Paragraph 131 as phrased.**

132.    Defendants' use of the Auto Driveaway Marks in association with Defendant InnovAuto's marks INNOVAUTO and INNOVAUTO and Design of Vehicle does deceive and cause confusion, and is likely to continue to cause confusion as to the source of the products and services offered by Defendants.

> **ANSWER:**    **Defendants deny the allegations of Paragraph 132 of Plaintiff's Complaint.**

133.    Defendant InnovAuto is using the Auto Driveaway Marks in a manner to create a false association between the companies as to the source of products and services.

> **ANSWER:**    **Defendants deny the allegations of Paragraph 133 of Plaintiff's Complaint.**

134.    Defendants' improper use of the Auto Driveaway Marks causes immediate and irreparable harm to Auto Driveaway due to its loss of control over the quality of goods and services advertised, offered, and provided under its Marks. The loss of Auto Driveaway's right to control the use of the Marks and the reputation of the services and goods provided in connection therewith is real and substantial.

> **ANSWER:**    **Defendants deny the allegations of Paragraph 134 of Plaintiff's Complaint.**

135.    Defendants' improper use of the Auto Driveaway Marks constitutes trademark and service mark infringement under common law.

> **ANSWER:**    **The allegations of Paragraph 135 of Plaintiff's Complaint constitute a legal conclusion to which no response is required. To the extent an answer is deemed necessary, Defendants deny the allegations of**

Paragraph 135 of Plaintiff's Complaint.

WHEREFORE, Defendants, Jeffrey Corbett, Auto Driveaway Richmond, LLC and InnovAuto USA, LLC, respectfully request that this Court enter judgment in their favor and against Plaintiff, Auto Driveaway Franchise Systems, LLC, with prejudice and with costs to Defendants, and provide for any further relief deemed necessary.

## COUNT III
### False And Deceptive Advertising Lanham Act § 43 (a)(1)(b)
### (All Defendants)

136.    Plaintiff Auto Driveaway incorporates the prior paragraphs 1-135 as if fully set forth here.

> **ANSWER:**    **Defendants restate and reallege their answers to Paragraphs 1 through 135 of Plaintiff's Complaint as though fully set forth herein as their response to Paragraph 136 of Plaintiff's Complaint.**

137.    Auto Driveaway owns the Marks described above in Paragraph 14-15 and the substantial goodwill associated therewith.

> **ANSWER:**    **Defendants admit the allegations of Paragraph 137 of Plaintiff's Complaint.**

138.    Under the Franchise Agreements, Defendant AD Richmond is a mere licensee with a right to use the Auto Driveaway's Marks and the associated goodwill, but only to the extent permitted by the Franchise Agreements.

> **ANSWER:**    **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 138 of Plaintiff's Complaint.**

139.    Defendant AD Richmond's violations of the Franchise Agreement and failure to properly operate the business in compliance with the Auto Driveaway System, constitutes a

misappropriation of Auto Driveaway's Marks and Trade Name.

> **ANSWER:** **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 139 of Plaintiff's Complaint. Defendants further deny any violations of the Franchise Agreements and any failure to operate the franchises pursuant to the "Auto Driveaway System." The remaining allegations of Paragraph 139 of Plaintiff's Complaint constitute a legal conclusion to which no response is required. To the extent an answer is deemed necessary, Defendants deny the remaining allegations of Paragraph 139 of Plaintiff's Complaint.**

140.    Defendants Corbett and AD Richmond are currently using the Auto Driveaway Marks in an unauthorized manner to promote Defendant InnovAuto.  Exhs. G, H, K, L. N. attached hereto.

> **ANSWER:** **Defendants deny the allegations of Paragraph 140 of Plaintiff's Complaint.**

141.    Defendant InnovAuto has no rights to use the Auto Driveaway Marks in any manner.

> **ANSWER:** **Defendants admit only that InnovAuto's right to use the Auto Driveaway name and/or marks is regulated by the Lanham Act and common law, and deny the allegations of Paragraph 141 as phrased.**

142.    Defendants' use of the Auto Driveaway Marks in association with Defendant InnovAuto's marks INNOVAUTO and INNOVAUTO and Design of Vehicle does deceive and cause confusion, and is likely to continue to cause confusion as to the source of the products and services offered by Defendants.

> **ANSWER:** **Defendants deny the allegations of Paragraph 142 of Plaintiff's Complaint.**

143.    Defendants are making a false statement of fact about Defendant InnovAuto's business and products by associating them with Auto Driveaway's Marks.

> **ANSWER:** Defendants deny the allegations of Paragraph 143 of Plaintiff's Complaint.

144. Defendants' deception is material and likely will influence consumer decisions when purchasing InnovAuto's and Auto Driveaway's business or products.

> **ANSWER:** Defendants deny the allegations of Paragraph 144 of Plaintiff's Complaint.

145. Defendants have caused their false statements to be placed into interstate commerce. Indeed, Defendants have posted a YouTube video holding out to the public that Defendant InnovAuto and Auto Driveaway are affiliated. Defendants are attempting to capitalize on the years of goodwill Auto Driveaway has created in its Marks.

> **ANSWER:** Defendants deny the allegations of Paragraph 145 of Plaintiff's Complaint.

146. Defendants' improper use of the Auto Driveaway Marks causes immediate and irreparable harm to Auto Driveaway due to its loss of control over the quality of goods and services advertised, offered, and provided under its Marks. The loss of Auto Driveaway's right to control the use of the Marks and the reputation of the services and goods provided in connection therewith is real and substantial.

> **ANSWER:** Defendants deny the allegations of Paragraph 146 of Plaintiff's Complaint.

147. Defendants are knowingly, willfully infringing upon Auto Driveaway's name and Marks.

> **ANSWER:** Defendants deny the allegations of Paragraph 147 of Plaintiff's Complaint.

148. Defendants intend to profit by using the Auto Driveaway name and marks to divert customers from Auto Driveaway to Defendants' new company, InnovAuto, so that the customers purchase services from Defendants and not Auto Driveaway.

**ANSWER:** **Defendants deny the allegations of Paragraph 148 of Plaintiff's Complaint.**

149.    Defendants' use of the Auto Driveaway Marks violates the Lanham Act, 15 U.S.C.§ 1125.

**ANSWER:** **The allegations of Paragraph 149 of Plaintiff's Complaint constitute a legal conclusion to which no response is required. To the extent an answer is deemed necessary, Defendants deny the allegations of Paragraph 149 of Plaintiff's Complaint.**

WHEREFORE, Defendants, Jeffrey Corbett, Auto Driveaway Richmond, LLC and InnovAuto USA, LLC, respectfully request that this Court enter judgment in their favor and against Plaintiff, Auto Driveaway Franchise Systems, LLC, with prejudice and with costs to Defendants, and provide for any further relief deemed necessary.

## COUNT IV
### False Designation of Origin Lanham Act § 43 (a)(1)(a) (All Defendants)

150.    Plaintiff Auto Driveaway incorporates the prior paragraphs 1-149 as if fully set forth here.

**ANSWER:** **Defendants restate and reallege their answers to Paragraphs 1 through 149 of Plaintiff's Complaint as though fully set forth herein as their response to Paragraph 150 of Plaintiff's Complaint.**

151.    Plaintiff Auto Driveaway owns the Marks described above in Paragraph 14-15 and the substantial goodwill associated therewith.

**ANSWER:** **Defendants admit the allegations of Paragraph 151 of Plaintiff's Complaint.**

152.    Under the Franchise Agreements, Defendant AD Richmond is a mere licensee with a right to use the Auto Driveaway's Marks and the associated goodwill, but only to the extent permitted by the Franchise Agreements.

**ANSWER:** **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for**

themselves. **To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 152 of Plaintiff's Complaint.**

153.     Defendant AD Richmond's violations of the Franchise Agreement and failure to properly operate the business in compliance with the Auto Driveaway System, constitutes a misappropriation of Auto Driveaway's Marks and Trade Name.

> **ANSWER:     The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 153 of Plaintiff's Complaint. Defendants further deny any violations of the Franchise Agreements and any failure to operate the franchises pursuant to the "Auto Driveaway System." The remaining allegations of Paragraph 153 of Plaintiff's Complaint constitute a legal conclusion to which no response is required. To the extent an answer is deemed necessary, Defendants deny the remaining allegations of Paragraph 153 of Plaintiff's Complaint.**

154.     Defendants Corbett and AD Richmond are currently using the Auto Driveaway Marks in an unauthorized manner to promote Defendant InnovAuto.   Exhs. G, H, K, L. N. attached hereto.

> **ANSWER:     Defendants deny the allegations of Paragraph 154 of Plaintiff's Complaint.**

155.     Defendant InnovAuto has no rights to use the Auto Driveaway Marks in any manner.

> **ANSWER:     Defendants admit only that InnovAuto's right to use the Auto Driveaway name and/or marks is regulated by the Lanham Act and common law, and deny the allegations of Paragraph 155 as phrased.**

156.     Defendants' use of the Auto Driveaway Marks in association with Defendant InnovAuto's marks INNOVAUTO and INNOVAUTO and Design of Vehicle does deceive and cause confusion, and is likely to continue to cause confusion as to the source of the products and services offered by Defendants.

> **ANSWER:** **Defendants deny the allegations of Paragraph 156 of Plaintiff's Complaint.**

157. Defendants are making a false statement of fact about Defendant InnovAuto's business and products by associating them with Auto Driveaway's Marks.

> **ANSWER:** **Defendants deny the allegations of Paragraph 157 of Plaintiff's Complaint.**

158. Defendants' deception is material and likely will influence consumer decisions when purchasing InnovAuto's and Auto Driveaway's business or products.

> **ANSWER:** **Defendants deny the allegations of Paragraph 158 of Plaintiff's Complaint.**

159. Defendants have caused their false statements to be placed into interstate commerce. Indeed, Defendants have posted a YouTube video holding out to the public that Defendant InnovAuto and Auto Driveaway are affiliated. Defendants are attempting to capitalize on the years of goodwill Auto Driveaway has created in its Marks.

> **ANSWER:** **Defendants deny the allegations of Paragraph 159 of Plaintiff's Complaint.**

160. Defendants' improper use of the Auto Driveaway Marks causes immediate and irreparable harm to Auto Driveaway due to its loss of control over the quality of goods and services advertised, offered, and provided under its Marks. The loss of Auto Driveaway's right to control the use of the Marks and the reputation of the services and goods provided in connection therewith is real and substantial.

> **ANSWER:** **Defendants deny the allegations of Paragraph 160 of Plaintiff's Complaint.**

161. Defendants are knowingly, willfully infringing upon Auto Driveaway's name and Marks.

> **ANSWER:** **Defendants deny the allegations of Paragraph 161 of Plaintiff's**

Complaint.

162. Defendants intend to profit by using the Auto Driveaway name and marks to divert customers from Auto Driveaway to Defendants' new company, InnovAuto, so that the customers purchase services from Defendants and not Auto Driveaway.

**ANSWER:** **Defendants deny the allegations of Paragraph 162 of Plaintiff's Complaint.**

163. Defendants' use of the Auto Driveaway Marks violates the Lanham Act, 15 U.S.C.§ 1125.

**ANSWER:** **The allegations of Paragraph 163 of Plaintiff's Complaint constitute a legal conclusion to which no response is required. To the extent an answer is deemed necessary, Defendants deny the allegations of Paragraph 163 of Plaintiff's Complaint.**

WHEREFORE, Defendants, Jeffrey Corbett, Auto Driveaway Richmond, LLC and InnovAuto USA, LLC, respectfully request that this Court enter judgment in their favor and against Plaintiff, Auto Driveaway Franchise Systems, LLC, with prejudice and with costs to Defendants, and provide for any further relief deemed necessary.

## COUNT V
### Breach of Contract (Corbett and AD Richmond)[1]

164. Plaintiff Auto Driveaway incorporates the prior paragraphs 1-163 as if fully set forth here.

**ANSWER:** **Defendants Corbett and AD Richmond restate and reallege their answers to Paragraphs 1 through 163 of Plaintiff's Complaint as though fully set forth herein as their response to Paragraph 164 of Plaintiff's Complaint.**

165. Defendant AD Richmond is a party to the Franchise Agreement for the

---

[1]As this Count V of Plaintiff's Complaint is not directed against InnovAuto USA, LLC, it makes no answer hereto. However, to the extent that an answer is deemed required, InnovAuto denies the allegations set forth within Count V of Plaintiff's Complaint in their entirety.

Richmond, VA franchise.

> **ANSWER:** **Defendants Corbett and AD Richmond admit the allegations of Paragraph 165 of Plaintiff's Complaint.**

166.    Defendant AD Richmond has breached that Franchise Agreement by a) misusing Auto Driveaway's Marks and Auto Driveaway System; b) violating the Standards of Operation; c) Disclosing Confidential Information, d) Competing with the Franchisor; e) Failing to disclose New Concepts to the Franchisor and failing to turn over such New Concepts to the Franchisor.

> **ANSWER:** **Defendants Corbett and AD Richmond deny the allegations of Paragraph 166 of Plaintiff's Complaint in their entirety.**

167.    Defendant AD Richmond is a party to the Franchise Agreement for the Nashville, TN franchise.

> **ANSWER:** **Defendants Corbett and AD Richmond admit the allegations of Paragraph 167 of Plaintiff's Complaint.**

168.    Defendant AD Richmond has breached that Franchise Agreement by a) misusing Auto Driveaway's Marks and Auto Driveaway System; b) violating the Standards of Operation; c) Disclosing Confidential Information, d) Competing with the Franchisor; e) Failing to disclose New Concepts to the Franchisor and failing to turn over such New Concepts to the Franchisor.

> **ANSWER:** **Defendants Corbett and AD Richmond deny the allegations of Paragraph 168 of Plaintiff's Complaint in their entirety.**

169.    Defendant AD Richmond is a party to the Franchise Agreement for the Cleveland, OH franchise.

> **ANSWER:** **Defendants Corbett and AD Richmond admit the allegations of Paragraph 169 of Plaintiff's Complaint.**

170.    Defendant AD Richmond has breached that Franchise Agreement by a) misusing Auto Driveaway's Marks and Auto Driveaway System; b) violating the Standards of Operation; c) Disclosing Confidential Information, d) Competing with the Franchisor; e) Failing to disclose

New Concepts to the Franchisor and failing to turn over such New Concepts to the Franchisor.

> **ANSWER:** **Defendants Corbett and AD Richmond deny the allegations of Paragraph 170 of Plaintiff's Complaint in their entirety.**

171.    Defendant AD Richmond is using Auto Driveaway's Trade Name, Marks, associated goodwill to create a false association with Defendant InnovAuto to actively promote a competing business.  (Exhs. G, H, K, L. N.)

> **ANSWER:** **Defendants Corbett and AD Richmond deny the allegations of Paragraph 171 of Plaintiff's Complaint.**

172.    As a direct result of Defendant AD Richmond's conduct, Auto Driveaway has lost and/or is imminently threatened with the loss of clients, business, and goodwill, and absent an order from the Court, such clients, business, and goodwill will continue to be  wrongfully diverted to Defendant InnovAuto.

> **ANSWER:** **Defendants Corbett and AD Richmond deny the allegations of Paragraph 172 of Plaintiff's Complaint.**

173.    Auto Driveaway has performed all of its obligations under the Franchise Agreements.

> **ANSWER:** **Defendants Corbett and AD Richmond deny the allegations of Paragraph 173 of Plaintiff's Complaint.**

174.    Defendant AD Richmond's conduct has also caused, and will continue to cause, damages to Auto Driveaway.

> **ANSWER:** **Defendants Corbett and AD Richmond deny the allegations of Paragraph 174 of Plaintiff's Complaint.**

WHEREFORE, Defendants, Jeffrey Corbett and Auto Driveaway Richmond, LLC, respectfully request that this Court enter judgment in their favor and against Plaintiff, Auto Driveaway Franchise Systems, LLC, with prejudice and with costs to Defendants, and provide for any further relief deemed necessary.

<u>**COUNT VI**</u>
**Breach of Contract – Personal Guaranty (Corbett)[2]**

175.     Plaintiff Auto Driveaway incorporates the prior paragraphs 1-174 as if fully set forth here.

>   **ANSWER:     Defendant Corbett restates and realleges his answers to Paragraphs 1 through 174 of Plaintiff's Complaint as though fully set forth herein as his response to Paragraph 175 of Plaintiff's Complaint.**

176.     Defendant Corbett personally guaranteed to Auto Driveaway that he would "punctually pay and perform each and every undertaking, agreement and covenant set forth in the [Franchise Agreements]," and he agreed to be personally bound by, and personally liable for the breach of each and every provision in the Franchise Agreements. (Exhibit H attached to the Franchise Agreements, which are attached hereto as Exhs. B, C, and D.)

>   **ANSWER:     The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendant Corbett denies the allegations of Paragraph 176 of Plaintiff's Complaint. Defendant Corbett further denies any breach of the Franchise Agreements.**

177.     Defendant Jeffrey Corbett is liable and responsible for the breaches and claims set forth in this Verified Complaint.

>   **ANSWER:     Defendant Corbett denies the allegations of Paragraph 177 of Plaintiff's Complaint.**

178.     Defendant Jeffrey Corbett has failed to abide by all of the covenants, representations, and agreements set forth in the Franchise Agreements.

>   **ANSWER:     Defendant Corbett denies the allegations of Paragraph 178 of Plaintiff's Complaint.**

---

[2]As this Count VI of Plaintiff's Complaint is not directed against Auto Driveaway Richmond, LLC and InnovAuto USA, LLC, they make no answer hereto. However, to the extent that an answer is deemed required, AD Richmond and InnovAuto deny the allegations set forth within Count VI of Plaintiff's Complaint in their entirety

179.    Defendant Jeffrey Corbett's breach of his personal guaranties to Auto Driveaway has also caused, and will continue to cause, damages to Auto Driveaway.

**ANSWER:    Defendant Corbett denies the allegations of Paragraph 179 of Plaintiff's Complaint.**

WHEREFORE, Defendant, Jeffrey Corbett, respectfully requests that this Court enter judgment in his favor and against Plaintiff, Auto Driveaway Franchise Systems, LLC, with prejudice and with costs to Defendant, and provide for any further relief deemed necessary.

**COUNT VII**
**Tortious Interference with Prospective Business Opportunity  (All Defendants)**

180.    Plaintiff Auto Driveaway incorporates the prior paragraphs 1-179 as if fully set forth here.

**ANSWER:    Defendants restate and reallege their answers to Paragraphs 1 through 179 of Plaintiff's Complaint as though fully set forth herein as their response to Paragraph 180 of Plaintiff's Complaint.**

181.    Auto Driveaway franchisees perform various services related to shipping vehicles for various individuals and entities.

**ANSWER:    Defendants admit the allegations of Paragraph 181 of Plaintiff's Complaint.**

182.    In many instances, Plaintiff Auto Driveaway and/or its franchisees have been servicing the same customers for a significant period of time.

**ANSWER:    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 182 regarding Plaintiff's servicing of the same customers for a significant period of time and therefore deny the same. However, Defendants admit that the Richmond, Nashville and Cleveland franchises do often service the same customers with which they have developed relationships over time.**

183.    Defendants are aware that Plaintiff Auto Driveaway has these business expectancies and relationships with its customers.

**ANSWER:** **Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 183 regarding Plaintiff's business expectancies and relationships with its customers and therefore deny the same.**

184.    Defendants intend to compete with Plaintiff Auto Driveaway in violation of the Franchise Agreements.

**ANSWER:** **Defendants deny the allegations of Paragraph 184 of Plaintiff's Complaint.**

185.    Defendants intend to cause a breach of those relationships Auto Driveaway has or had with its customers.

**ANSWER:** **Defendants deny the allegations of Paragraph 185 of Plaintiff's Complaint.**

186.    There is no justification for Defendants' blatant disregard and interference with Plaintiff Auto Driveaway's business expectancies with its customers.

**ANSWER:** **Defendants deny the allegations of Paragraph 186 of Plaintiff's Complaint.**

187.    Defendants'    intentional    interference    with    Auto    Driveaway's business expectancies with its customers has resulted in damages to Auto Driveaway.

**ANSWER:** **Defendants deny the allegations of Paragraph 187 of Plaintiff's Complaint.**

WHEREFORE, Defendants, Jeffrey Corbett, Auto Driveaway Richmond, LLC and InnovAuto USA, LLC, respectfully request that this Court enter judgment in their favor and against Plaintiff, Auto Driveaway Franchise Systems, LLC, with prejudice and with costs to Defendants, and provide for any further relief deemed necessary.

## COUNT VIII
### Declaratory Judgment That Auto Driveaway Owns Technology (All Defendants)

188.    Plaintiff Auto Driveaway incorporates the prior paragraphs 1-187 as if fully set

51

forth here.

> **ANSWER:** **Defendants restate and reallege their answers to Paragraphs 1 through 187 of Plaintiff's Complaint as though fully set forth herein as their response to Paragraph 188 of Plaintiff's Complaint.**

189. Pursuant to paragraph 12.5 of the Franchise Agreements, Defendants AD Richmond and Corbett agreed as follows:

> You shall disclose to us prior to executing this Agreement all copyrighted or other pre-existing materials to which you claim ownership or any other rights. You shall fully and promptly disclose to us all ideas, concepts, methods, and techniques relating to the development and/or operation of the Franchise conceived or developed by you and/or your Affiliates or employees during the term of this Agreement. All such materials created or conceived by you or in collaboration with others during the term of this Agreement shall be [Auto Driveaway's] sole and exclusive property without further consideration to you. You agree to execute any documentation necessary to perfect our ownership rights, including, without limitation, copyright, trademark, and patent applications, assignments, and/or recordings as we may request.

(Exhs. A, B, and C at ¶ 12.5.)

> **ANSWER:** **The Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 189 of Plaintiff's Complaint.**

190. Defendants AD Richmond and Corbett have breached and continue to breach this provision by attempting to keep, market, and sell the Unauthorized App. Defendants AD Richmond and Corbett knowingly commissioned the very same developer who was working on the AD Driver 360 mobile application to create the Unauthorized App for Defendant InnovAuto during the terms of the Franchise Agreements. In those Agreements, Defendants AD Richmond and Corbett agreed that the Unauthorized App is the sole and exclusive property of Auto Driveaway.

> **ANSWER:** **Defendants admit only to their agreement to develop the InnovAuto software with the Virginia-based software developer Corbett referred**

> **Plaintiff to for purposes of updating Auto Driveaway's mobile application. Answering further, the Franchise Agreements contained at Exhibits B, C and D to Plaintiff's Complaint are written documents which speak for themselves. To the extent that they are inconsistent with the Franchise Agreements, Defendants deny the allegations of Paragraph 190 of Plaintiff's Complaint. Defendants further dispute the classification of the InnovAuto software as an "Unauthorized App," and further deny any attempts to sell the InnovAuto software, any breach of the Franchise Agreements, that the InnovAuto software is covered under the Franchise Agreements that Plaintiff has any ownership interest in the InnovAuto software and the remaining allegations of Paragraph 190 of Plaintiff's Complaint.**

191. Indeed, Defendants AD Richmond and Corbett retained the developer for the Unauthorized App for InnovAuto while they were assisting Auto Driveaway with updating the AD Driver 360 mobile application. Defendants retained the same company and the same employee developer, to create the Unauthorized App.

> **ANSWER:** **Defendants admit only to their agreement to develop the InnovAuto software with the Virginia-based software developer Corbett referred Plaintiff to for purposes of updating Auto Driveaway's mobile application. Answering further, Defendants dispute the classification of the InnovAuto software as an "Unauthorized App" and deny the remaining allegations of Paragraph 191 of Plaintiff's Complaint.**

192. As a direct result of Defendants' conduct, Auto Driveaway will be irreparably damaged if Defendants are allowed to use, market, and sell the Unauthorized App.

> **ANSWER:** **Defendants deny the allegations of Paragraph 192 of Plaintiff's Complaint.**

193. Plaintiff Auto Driveaway has performed all of its obligations under the Franchise Agreements.

> **ANSWER:** **Defendants deny the allegations of Paragraph 193 of Plaintiff's Complaint.**

194. Defendants' conduct has caused, and will continue to cause, damages to Auto Driveaway.

**ANSWER:** **Defendants deny the allegations of Paragraph 194 of Plaintiff's Complaint.**

195. Plaintiff Auto Driveaway's interest in the Unauthorized App, created based upon Auto Driveaway proprietary software and know-how is far greater than Defendants Corbett or AD Richmond's alleged interest; and Defendant InnovAuto is merely an alter-ego for Defendant Corbett and has no rights in the Unauthorized App.

**ANSWER:** **Defendants deny the allegations of Paragraph 195 of Plaintiff's Complaint.**

WHEREFORE, Defendants, Jeffrey Corbett, Auto Driveaway Richmond, LLC and InnovAuto USA, LLC, respectfully request that this Court enter judgment in their favor and against Plaintiff, Auto Driveaway Franchise Systems, LLC, with prejudice and with costs to Defendants, and provide for any further relief deemed necessary.

## AFFIRMATIVE DEFENSES

Defendants, Jeffrey Corbett, Auto Driveaway Richmond, LLC and InnovAuto USA, LLC (hereinafter "Defendants"), through their attorneys, O'Hagan Meyer, LLC, pleading in the alternative and without prejudice to any of the previous responses or denials or to Plaintiff's burden of proof, state by way of Affirmative Defenses to the Plaintiff's, Auto Driveaway Franchise Systems, LLC's, Complaint as follows. Defendants further reserve the right to supplement, amend, modify, add or delete defenses as further information is developed in discovery in this case up through trial.

### Affirmative Defense No. 1
### Lack of Subject Matter Jurisdiction – All Defendants (All Counts)

Plaintiff's claims against Defendants are barred in whole or in part because this Court lacks subject matter jurisdiction over Plaintiff's claims as a matter of law. In particular, this

Court lacks subject matter jurisdiction over Plaintiff's claims to the extent that there is no true federal question under the Lanham Act and instead, Plaintiff's claims arise out of and will be resolved by Illinois contract law. Additionally, this Court lacks subject matter jurisdiction over Plaintiff's claims to the extent that Plaintiff has failed to meet the requirements of complete diversity and the monetary threshold for the amount in controversy to proceed under the Court's diversity jurisdiction. As a result, the Court further lacks any basis to exercise its supplemental jurisdiction over Plaintiff's state law claims.

**Affirmative Defense No. 2**
**Lack of Personal Jurisdiction – InnovAuto USA, LLC (Counts I-IV, VII-VIII)**

Plaintiff's claims against Defendant InnovAuto USA, LLC are barred in whole or in part because this Court lacks personal jurisdiction over InnovAuto, which is a Virginia limited liability company with a Virginia resident as its sole member, and which further lacks any contacts with the State of Illinois to permit this Court to exercise personal jurisdiction over InnovAuto as a matter of Illinois law.

**Affirmative Defense No. 3**
**Fair Use – All Defendants (All Counts)**

Plaintiff's claims against Defendants are barred in whole or in part by the doctrine of fair use. Defendants are entitled to use the Plaintiff's trade name and/or marks pursuant to the parties' licensing agreement and otherwise permitted to use the Plaintiff's trade name and/or marks under the doctrine of fair use to truthfully identify Plaintiff's services in order to describe and/or compare the InnovAuto concept and/or software in relation to Plaintiff's services. Defendants' use of Plaintiff's trade name and/or marks is consistent with the parties' licensing agreement and does not otherwise extend beyond what is reasonably necessary to identify Plaintiff's services and/or the InnovAuto concept and/or software for purposes of description

55

and/or comparison only.

**Affirmative Defense No. 4**
**Unclean Hands – Corbett and AD Richmond (All Counts)**

Plaintiff's claims against Defendants Corbett and AD Richmond are barred in whole or in part by the equitable doctrine of unclean hands in that their selective enforcement of certain terms of the Franchise Agreements and misinterpretation thereof in connection with the InnovAuto concept and/or software are designed to interfere with Defendants' contractual rights under the Franchise Agreements, designed to allow Plaintiff to terminate the Franchise Agreements in bad faith and for the purpose of allowing Plaintiff to acquire Defendants' franchise locations without good cause or just compensation, and designed to leverage and otherwise interfere with Defendants' rights to conduct business and earn a living to Defendants' detriment and to the benefit of Plaintiff.

**Affirmative Defense No. 5**
**Good Faith and Substantial Compliance – Corbett and AD Richmond (All Counts)**

Plaintiff's claims against Corbett and AD Richmond are barred in whole or in part by Defendant's good faith conduct and fair dealing, and the absence of any negligent or intentional or reckless actions or omissions in violation of the Franchise Agreements. Defendant acted reasonably, reasonably relied upon their interpretation of the Franchise Agreements, and substantially complied with the Franchise Agreements, which do not extend to or cover the InnovAuto concept and/or software.

**Affirmative Defense No. 6**
**Prior Material Breach – Corbett and AD Richmond (All Counts)**

Plaintiff's claims against Defendants Corbett and AD Richmond are barred in whole or in part because any breach of the Franchise Agreements by Defendants Corbett and AD Richmond is excused in light of the prior, material breach of the Franchise Agreements by Plaintiff

including but not limited to the failure to provide ongoing assistance regarding business operations and procedures, failure to provide approval for new services for the benefit of all franchises, the failure to provide a variation from business practices to capitalize on a highly lucrative new business opportunity for the benefit of all franchises, and any other provisions of the Franchise Agreements which may apply under the circumstances.

WHEREFORE, Defendants, Jeffrey Corbett, Auto Driveaway Richmond, LLC and InnovAuto USA, LLC, respectfully request that this Court enter judgment in their favor and against Plaintiff, Auto Driveaway Franchise Systems, LLC, with prejudice and with costs to Defendants, and provide for any further relief deemed necessary.

Respectfully Submitted,

By:  ____/s/ Kevin M. O'Hagan_____
           One of the attorneys for Defendants,
           Jeffrey Corbett, Auto Driveaway Richmond,
           LLC and InnovAuto USA, LLC

Kevin M. O'Hagan (ARDC No. 6211446)
James W. Davidson (ARDC No. 6281542)
Kristen A. Cemate (ARDC No. 6299262)
O'Hagan Meyer, LLC
One East Wacker Drive, Suite 3400
Chicago, Illinois 60601
T: 312.422.6100
F: 312.422.6110
kohagan@ohaganmeyer.com
jdavidson@ohaganmeyer.com
kcemate@ohaganmeyer.com

**CERTIFICATE OF SERVICE**

This is to certify that on the **16th day of August, 2018**, I, Kevin M. O'Hagan, an attorney of record, electronically filed the foregoing *Defendants' Answer and Affirmative Defenses*, using the CM/ECF system, pursuant to the General Order on Electronic Case Filing and in compliance with Local Rules 5.2(a) and 5.5, which will effectuate service upon all counsel of record via their email addresses of record.


By: _/s/ Kevin M. O'Hagan_____
     One of the attorneys for Defendants,
     Jeffrey Corbett, Auto Driveaway Richmond,
     LLC and InnovAuto USA, LLC


Kevin M. O'Hagan (ARDC No. 6211446)
James W. Davidson (ARDC No. 6281542)
Kristen A. Cemate (ARDC No. 6299262)
O'Hagan Meyer, LLC
One East Wacker Drive, Suite 3400
Chicago, Illinois 60601
T: 312.422.6100
F: 312.422.6110
kohagan@ohaganmeyer.com
jdavidson@ohaganmeyer.com
kcemate@ohaganmeyer.com